COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

GARY EUGENE SIMS,                                       )

                                                                              )              No.  08-01-00121-CR

Appellants,                         )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )              
282nd District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of Dallas County, Texas

Appellee.                           )

                                                                              )            
(TC# F-0045450-PS)

                                                                              )

 

O
P I N I O N

 

Appellant, Gary
Eugene Sims, appeals from the jury=s
verdict convicting him of aggravated sexual assault and the same jury=s imposition of a life sentence for the
offense.

Appellant=s court-appointed counsel filed a brief
meeting the requirements of Anders v. California, 386 U.S. 738, 18
L.Ed.2d 493, 87 S.Ct. 1396, reh.
denied, 388 U.S. 924, 18 L.Ed.2d 1377, 87 S.Ct. 2094 (1967) by presenting a professional evaluation
of the record demonstrating why, in effect, there are no arguable grounds to be
advanced.  High v.
State, 573 S.W.2d 807 (Tex.Crim.App. 1978); Currie
v. State, 516 S.W.2d 684 (Tex.Crim.App. 1974).  Appellant filed a pro se brief
presenting seven issues, which we reformulate for clarity:

(1)        The trial court erred in permitting the
State to present perjured testimony;

(2)        the conviction
should be reversed for the State=s
improper questions and sidebar remarks; 








(3)        the State
failed to disclose exculpatory evidence;

(4)        the trial court
erred in permitting evidence of extraneous offenses during the punishment phase
of the trial;

(5)        evidence is
insufficient to establish Appellant used a deadly weapon;

(6)        appellant was
rendered ineffective assistance of counsel; and 

(7)        the trial court
erred in denying Appellant a speedy trial.

 

We will affirm the conviction and
punishment.  

SUMMARY
OF THE EVIDENCE








June Smith[1]
woke very early on Sunday, February 6, 2000, after falling asleep from watching
television with her daughter.  She began
cleaning and took garbage outside to the bin at her apartment=s parking lot.  She noticed a car parked in the near-empty
lot, and as she returned home, the man in the driver=s
seat pointed a gun at her and ordered her to get into the car.  Ms. Smith identified Appellant as the man in
the vehicle.  Afraid, she obeyed
Appellant, who drove her to a house, where he locked them into his bedroom with
a key.  The door had no knob on it, only
the lock.  He told her that they were
getting ready to party, and when she refused to take her clothes off or obey
him, Appellant beat her with his fists and a fireplace poker, fired a gun
toward her into the mattress, and threw a lamp at her, breaking her arm in the
process.  After he shot at her, Ms. Smith
began to cooperate, taking her clothes off, drinking some champagne, and
smoking from a glass or metal pipe he handed to her.  She noticed a flash to the side as he took
photos of her drinking and smoking. 
Afterwards, he raped her in the bathroom over a sink lined with
pillows.  After he gave her some food,
Appellant fell asleep on the bed, and Ms. Smith took the opportunity to tear
the address portion from some mail and to call 911.  Before she could complete the call, Appellant
woke up and hung up the phone.  Ms. Smith
stated that he was agitated and began pacing, saying AWhat -- what am I gonna do
now?  I can=t
lose everything behind this.  I=ve never done this before.  You=ve caused me to do something I=ve never done before. 
What am I gonna do?  You know, you shouldn=t have been trying to steal from me;
you shouldn=t
have been trying to do this.@  Ms. Smith denied stealing from
Appellant.  Afterwards, Appellant drove
Ms. Smith back to her apartment complex, and she called the police from a
neighbor=s
apartment.

Appellant
testified and did not deny that he had taken Ms. Smith to his home.  Appellant said he had met Ms. Smith about a
year before, and they had spent some time together and had sexual intercourse
in a Amoney
type@
arrangement.  On February 6, 2000,
Appellant went to Ms. Smith=s
apartment.  When she answered the door,
he told her AIf you=ve got a
little time, I=ve got a little money.@  She came out and got into his car, and he
drove her to his house where they drank, ate some food, and had consensual
sexual intercourse.  He said he took
pictures of Ms. Smith, because he had been robbed before and he liked to take
pictures.  He denied making her
smoke.  Afterwards, he fell asleep but
the security alarm to his bedroom roused him. 
When he got up, he found Ms. Smith trying to leave the house with his
wallet, a watch, and the gun.  In trying
to get his property back, the gun fired, and Ms. Smith suffered injuries.  Because she plead
that she would be violating her probation, he did not call the police and
merely returned her to her home.








The State indicted
Appellant of intentionally and knowingly causing the penetration of June Smith=s female sexual organ without her
consent with his sexual organ while using and exhibiting a deadly weapon, a
firearm.  In addition to Ms. Smith=s testimony, the State presented to the
jury during the guilt-innocence phase of the trial:  the audio tapes from Ms. Smith=s calls to 911; a torn piece of paper
showing an address; a gun; and photographs of Appellant=s
bedroom and the attached bathroom--including the door without a knob; a bullet
hole in the mattress; an electric bill with the address portion torn off; a
broken lamp; a fireplace poker; and Ms. Smith during the medical
examination.  The jury found Appellant
guilty of aggravated sexual assault.   

During the
punishment phase of the trial, the State introduced evidence that Appellant had
committed three extraneous offenses or bad acts when he sexually assaulted two
women in 1995 and also assaulted an inmate inside the jail in June 2000.  The jury then returned the verdict of life
confinement.

DISCUSSION

Appellant objects
in his Issues One, Two, and Four to the admission of various
evidence, which are subject to the abuse of discretion standard, and we
discuss those issues first.  We note that
the defense made no objections to any of the evidence that Appellant complains
of during the trial; hence, any error was waived and appellate issues not
preserved.  Tex.R.App.P. 33.1.  In the interest of justice, however, we will
address the merits of Appellant=s
arguments.

Abuse
of Discretion Standard








We review the
trial court=s
decision to admit or exclude evidence under an abuse of discretion
standard.  Green v. State, 934
S.W.2d 92, 101‑02 (Tex.Crim.App. 1996), cert.
denied, 520 U.S. 1200, 117 S.Ct. 1561, 137
L.Ed.2d 707 (1997); Montgomery v. State, 810 S.W.2d 372, 379‑80 (Tex.Crim.App. 1990). 
We will not reverse a trial court=s
ruling, which was within the Azone
of reasonable disagreement.@  Green, 934 S.W.2d at
102; Montgomery, 810 S.W.2d at 391.  A trial court=s
ruling will be sustained on appeal if it is correct on any theory of law
applicable to the case, even if the trial court gives the wrong reason for the
decision, and this is especially true with regard to admission of
evidence.  Romero v.
State, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

Issue
One:  Admission of Perjury

Appellant first
claims that June Smith, the alleged victim, committed perjury, the State
knowingly used the perjured testimony, and the trial court erred in allowing
the perjured testimony.  A prosecutor=s knowing use of perjured testimony
violates the Due Process Clause of the Fourteenth Amendment to the United
States Constitution.  Ex
Parte Castellano, 863
S.W.2d 476, 481 (Tex.Crim.App. 1993).  Perjury occurs when a person makes a false
statement under oath with intent to deceive and with the knowledge of the
statement=s
meaning.  See Tex.Pen.Code Ann. '
37.02(a)

(Vernon 1994).

Ms. Smith
testified as follows, and Appellant contends the italicized portions of the
testimony were perjured:

Ms.
Smith:        -- and he [Appellant] was
pacing and scratching his head with the gun saying, >What -- what am I gonna do
now?  I can=t
lose everything behind this.  I=ve never done this before.  You=ve caused me to do something I=ve never done
before.  What am I gonna
do?  You know, you shouldn=t have been trying to steal from me;
you shouldn=t
have been trying to do this.=

 

The
State:         You didn=t know if any of that was true or not?

 

[Court=s admonition omitted.]

 

The
State:         You didn=t know if any of that was true or not,
did you, at that point.

 

Ms.
Smith:        None of that was true.

 

                                                              .               .               .

 








The
State:         So, what did he do at that
point?

 

Ms.
Smith:        At that point, he was still
walking frantic.  So, I told him -- I
started telling him, >Please,
whatever you do,=
begging him, >don=t call the police, because I=m on parole, and my probation officer= -- I told him about a blue warrant; that
I=ve got a blue warrant out on me.

 

The
State:         Now, is that true?

 

Ms.
Smith:        No.

                                                              .               .               .

 

The
State:         But you were telling him
that for what reason?

 

Ms.
Smith:        To think maybe so he wouldn=t
know that I was talking to the police on the phone, and he was frantic because
I was on the phone.

                                                              .               .               .

 

Defense:           Well, you=ve indicated --

 

Ms.
Smith:        But he
--

 

Defense:           -- that you told -- that you told
Mr. Sims here, >Don=t call the
police.  I=ve got a blue warrant out on me.=

 

Ms.
Smith:        Correct.  [Emphasis added].

 








Appellant offers
no evidence other than his testimony to prove Ms. Smith=s
testimony was false and made with the intent to deceive.  However, a conflict in the witnesses= testimony does not render the
testimony a perjury; rather, it creates an issue of credibility of the
witnesses, which the jury has the exclusive power to resolve.  See Santellan v.
State, 939 S.W.2d 155, 164 (Tex.Crim.App.
1997). Since there is no evidence that Ms. Smith=s
testimony was false and made with the intent to deceive, the State did not err
in eliciting Ms. Smith=s
testimony, and the trial court did not abuse discretion in admitting the
testimony into evidence.  We overrule
Appellant=s first
issue.

Issue
Two:  Improper Sidebar Remarks and
Arguments

Appellant contends
in his second issue that the prosecutor improperly questioned him and made
side-bar remarks.  Texas Rules of
Evidence 611 governs the interrogation and presentation of witnesses.  See Tex.R.Evid. 611. 
Rule 611(a) grants the trial court the discretion to control the process
of interrogation and presentation to ensure the process:  (1) is effective for the ascertainment of the
truth; (2) avoids needless consumption of time; and (3) protects witnesses from
harassment or undue embarrassment.  Tex.R.Evid. 611(a).  Cross‑examination
may extend to any matter relevant to the issues, including the witnesses=
credibility.  Tex.R.Evid. 611(b).  Leading questions are permitted only for the
examination of a hostile witness, an adverse party, or a witness identified
with an adverse party, except when it is necessary to develop the testimony
during direct examination.  Tex.R.Evid. 611(c).

Appellant first
points to the prosecutor asking Ms. Smith on direct examination, ADid you
think  . . . he [Appellant] was going --
did you think he was going to kill you?@  Although this was a leading question put to a
non-hostile witness during direct examination, it was properly asked to develop
testimony from Ms. Smith and guide her. 
This was permissive under Rule 611(c), and there was no error in the
asking or allowing of the question by the prosecutor and the trial court.  

Next, the State
asked Appellant during cross-examination about handing his camera over to the
police:  AAll
right.  That didn=t have any --
anything to do with maybe you had thought this out beforehand?@ 
The question was proper, because it was asked during cross-examination
and was relevant since it probed Appellant=s
motive and intent.  








Finally, Appellant
complains of the State remarking, AI
assume your answer, from your ramblings, were that no, that was not your
intent; that=s not why
you did these things.@  The prosecutor=s
comment was made after a series of questions asking Appellant whether he had 

pre-planned
the alleged sexual assault and the subsequent events.  Immediately after the prosecutor made the
comment, Appellant responded, AI
-- didn=t
-- I didn=t
pre-plan no -- none of these events, sir.@  It appears the prosecutor made a follow-up
question in the form of a statement, which Appellant affirmed.  As such, it was proper cross-examination
under Rule 611(b).  Moreover, even if we
consider that the prosecutor made a side-bar comment, we could not reverse the
conviction, unless the prosecutor exposed the jury to injurious and prejudicial
matters reasonably calculated to prevent a fair trial.  See Mata v. State, 867
S.W.2d 798, 802 (Tex.App.--El Paso 1993, no
pet.).  A remark summarizing Appellant=s testimony and which Appellant agreed
to immediately afterwards is not information that would render the trial
completely unfair to Appellant.  The
question was proper.  We overrule
Appellant=s second
issue.

Issue
Four:  Admission of Extraneous Offenses
during Punishment Phase








In his fourth
issue, Appellant argues the trial court abused its discretion by allowing into
evidence during the punishment phase of trial photographs showing a woman
drinking and the testimony of two women who alleged Appellant sexually
assaulted them.  Article 37.07 of the
Code of Criminal Procedure permits the State to introduce during the punishment
phase of trial any matter relevant to the sentencing, including evidence of an
extraneous crime or bad conduct shown beyond a reasonable doubt by evidence to
have been committed by the defendant or for which the defendant could be held
criminally responsible.  Tex.Code Crim.Proc.Ann.
art. 37.07, '
3(a)(1)(Vernon Supp. 2002).  Before considering the evidence, the jury
must be satisfied beyond a reasonable doubt that the extraneous bad acts or
offenses are attributable to the defendant. 
Huizar v. State, 12 S.W.3d 479,
481 (Tex.Crim.App. 2000), quoting Fields v. State,
1 S.W.3d 687 (Tex.Crim.App. 1999).  In reviewing the sufficiency of the evidence,
we must view the evidence in the light most favorable to the verdict, and
determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Dewberry v.
State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999).








At the pretrial
hearing, the State indicated its intention to introduce the evidence of three
extraneous sexual assaults from 1995 through 1996.  At trial, Valerie Fullmithter
and Tremelia Johnson testified that Appellant
sexually assaulted them in two separate incidents in 1995.  Ms. Fullmithter identified
Appellant in court and said she met Appellant at a friend=s house in June of 1995.  She thought they were going out to eat or
drink, but Appellant drove to his house and once they were inside, he
threatened her with a knife and ordered her to take off her clothes.  He then took her to his bedroom and raped her
in the attached bathroom over the sink. 
She escaped by jumping from his car as he drove her back and made a
report to the police.  Ms. Fullmithter did not pursue the complaint, because she was
on probation.  Ms. Johnson also
identified Appellant as the man that she had met while working at a department
store in October 1995.  A few days later,
Appellant offered her a ride home and something to eat at his house.  At the house, they went through the kitchen
then to the bedroom, which had no door knobs. 
Appellant wanted Ms. Johnson to take her clothes off and when she
refused, he grew angry and aggressive and began cursing at her.  Afraid, she obeyed him and he took her into
the bathroom and raped her on top of the sink. 
She escaped through the front door when Appellant fell asleep and
reported the incident to the police but was unable to make contact with the
detective later.  Finally, the State
introduced into evidence State=s
Exhibits 33, 34, 35, and 36, or four photographs of an apparently naked woman
with a rose tattoo on a bed.  Appellant
admitted taking the photographs of the unknown woman.

Ms. Fullmithter=s
and Ms. Johnson=s
testimony was sufficient evidence to support beyond a reasonable doubt that
Appellant committed prior sexual assaults. 
Both witnesses were able to identify Appellant in court as the person
who had taken them to his home and thereafter threatened violence and raped
them.  Appellant also admitted taking the
pictures of the naked woman in the bed.  

The testimony and
the photographs were also relevant and therefore admissible under Article
37.07.  Tex.Code Crim.Proc.Ann.
art. 37.07, '
3(a)(1). 
Evidence is relevant if it tends to make the existence of any fact that
is of consequence to the determination of the action more probable or less
probable than it would be without the evidence. 
Tex.R.Evid. 401.  That Appellant had sexually assaulted at
least two women in 1995 under very similar circumstances as the assault upon
Ms. Smith is relevant, since Ms. Smith=s
description of the assault was nearly identical to Ms. Fullmithter=s and Ms. Johnson=s account.  The photographs showed a woman drinking and
sitting on the bed, similar to the way Ms. Smith was ordered to pose when
Appellant took her photographs in her testimony.  We overrule Appellant=
fourth issue.

Issue
Three:  Failure to Disclose Exculpatory
Evidence








Appellant argues
that the State violated his due process rights in not disclosing the existence
of photographs he took of Ms. Smith.  The
State has the affirmative duty to turn over existing material, favorable
evidence to the defense under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Little v. State, 991
S.W.2d 864, 866 (Tex.Crim.App. 1999).  Texas has adopted a three-part test to
determine whether the State=s
non-disclosure of evidence violated a defendant=s
right to due process:  (1) the prosecutor
failed to disclose evidence; (2) the evidence was favorable to the accused; and
(3) the evidence is material.  Little, 991 S.W.2d at 866.  If the State turned in the evidence in time
for the defendant to use it in his defense, the defendant=s Brady claim
fails.  Id.

At the pretrial
arraignment hearing, the prosecutor stated that he had turned over all evidence
that the defense had requested and that the defense counsel had viewed the
photographs:

The
State:         I=ve given him [defense counsel] several different items that
I have in my possession, tape recordings of two 9-1-1 calls by the victim.  Calls by the defendant.

He has the rape
exam.  He has the forensics that I
have.  The physician=s exam.  Evidence report from the
police department.  He -- he=s looked at the pictures and indicated
that -- I=m going
to have all the physical evidence down here Monday, and he=ll have a
chance to look at it.

I believe everything he=s
asked for I have provided for him.  

. . .  I believe that -- I=ve tendered everything I can at this point.

 

The defense did not contradict the
prosecutor=s
assertions at the hearing or at any time afterwards, nor did Appellant seek to
present the photographs of Ms. Smith into evidence, although he admitted taking
her photos.  This is not a case of the
State hiding the evidence; not only did the defense apparently review all
photographs in the State=s
possession, Appellant knew of the photographs of Ms. Smith.  The State did not fail to disclose
exculpatory evidence.  We overrule
Appellant=s third
issue.

Issue
Five:  Insufficiency of the Evidence

Appellant next
contends in his fifth issue that the evidence was insufficient to show he used
a deadly weapon.








When examining the
legal sufficiency of the evidence, we look at the evidence in a light most
favorable to the verdict in order to determine whether any rational trier of fact could find the essential elements of the
crime as alleged beyond a reasonable doubt. 
Dewberry, 4 S.W.3d at 740.  Our duty is not to reexamine the evidence and
impose our own judgment as to whether the evidence establishes guilt beyond a
reasonable doubt, but only to determine if the findings by the trier of fact are rational. 
Lyon v. State, 885 S.W.2d 506, 516-17 (Tex.App.--El Paso 1994, pet. ref=d).  Any inconsistencies in the evidence are
resolved in favor of the verdict.  Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App.
1991).  In a review of the factual
sufficiency of the evidence, all evidence are examined without the prism of Ain the light most favorable to the
prosecution,@ and we
will set aside the verdict only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust.  Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996).  We defer to the fact
finder=s
determinations in reviewing the weight given to the evidence.  Clewis, 922 S.W.2d at 133.  An
appellate court cannot substitute its judgment for that of the fact finder=s and should not intrude upon the fact
finder=s role as
the sole judge of the weight and credibility of the witnesses= testimony.  Santellan, 939 S.W.2d at 164.

A firearm is a
deadly weapon.  Tex.Pen.Code Ann. '
1.07(17)(A)(Vernon 1994).  Ms. Smith testified that Appellant
pointed a gun at her to get her into his car. 
Later, he pointed the gun at her in the bedroom as he ordered her to
strip and fired it close enough that she felt the bullet go by her face when
she refused.  Ms. Smith said that she
obeyed him after he fired the gun, because she was afraid for her life.  The police found in Appellant=s room a gun, a bullet hole in the
mattress and the wall, and the bullet. 
The evidence is legally sufficient to find that Appellant used a deadly
weapon.  








In challenging the
sufficiency of the evidence, Appellant argues that the police did not find a
powder burn on Ms. Smith=s
face and that the gun was fired accidentally while he and Ms. Smith struggled
for his property.  However, the
conflicting testimony was exclusively within the jury=s
province to resolve, and this Court lacks the power to review that
finding.  Since the jury found that a
deadly weapon was used and thus found Ms. Smith=s
testimony more credible, the conviction cannot be challenged on this
ground.  We overrule Appellant= fifth issue.

Issue
Six:  Ineffective Assistance of Counsel

Appellant
complains that he had ineffective assistance of counsel when his counsel failed
to object to portions of Ms. Smith=s
testimony, which Appellant argued was perjured in his first issue.  The Texas Court of Criminal Appeals adopted
the two-prong test for reviewing a claim for ineffective assistance of counsel
as enunciated in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  A defendant claiming ineffective assistance
of counsel must show by preponderance of evidence that (1) the counsel acted
deficiently and (2) the counsel=s
deficient performance prejudiced the defense. 
Stafford v. State, 813 S.W.2d 503, 505 (Tex.Crim.App. 1991). 
There is a strong presumption that a counsel=s
action was within the wide range of reasonable professional assistance.  Jackson v. State,
877 S.W.2d 768, 771 (Tex.Crim.App. 1994).  The record must definitely and affirmatively
support any allegations of ineffective assistance.  Thompson v. State, 9
S.W.3d 808, 813 (Tex.Crim.App. 1999).  A reviewing court defers to the judgment of
the trial court and looks at the totality of the representation, being hesitant
to declare a single error as per se ineffective assistance.  Thompson, 9 S.W.3d
at 813.  However, a single
egregious act or omission may constitute ineffective assistance.  Id.








We do not reach
the question of whether trial counsel=s
actions were objectively reasonable, because the appellate record in this case
does not establish the reasons behind trial counsel=s
actions.  See Thompson, 9 S.W.3d at 813-14. 
However, we note that a single instance of error usually does not
constitute ineffective assistance, and the failure to object to testimony which
we have already deemed not perjured is not so egregious as to constitute
ineffective assistance.  See Thompson,
9 S.W.3d at 813. 
Appellant has not pointed out how the failure to object to admissible
testimony could be an unreasonable decision and consequently has failed to
rebut the strong presumption that counsel=s
action during the trial fell within a wide range of reasonable professional
assistance.  See Thompson, 9 S.W.3d at 814.  We
overrule Appellant=s sixth
issue.

Issue
Seven:  Right to Speedy Trial

In his seventh
issue, Appellant argues he was denied his right to a speedy trial.  While Texas has a separate constitutional
right to a speedy trial, we use the federal analysis as outlined in Barker
v. Wingo, 407 U.S. 514, 92 S.Ct.
2182, 33 L.Ed.2d 101 (1972).  Harris v. State, 827 S.W.2d 949, 956 (Tex.Crim.App.
1992).  The essence of the right
to a speedy trial is Aorderly
expedition and not mere speed.@  State v. Munoz, 991 S.W.2d 818, 821 (Tex.Crim.App. 1999), citing U.S. v. Marion,
404 U.S. 307, 313, 92 S.Ct. 455, 459‑60, 30
L.Ed.2d 468 (1971).  The reviewing court
considers four factors:  (1) the length
of the delay; (2) the reason for the delay; (3) whether the defendant asserted
his speedy trial rights; and (4) any resulting prejudice to the defendant.  Munoz, 991 S.W.2d at
821.








The defendant has
the burden of first showing that sufficient delay has occurred to require
application of the Barker v. Wingo balancing
test.  Lott v. State,
951 S.W.2d 489, 493 (Tex.App.--El Paso 1997, pet. ref=d).  The length of the delay is measured from the
time the defendant is arrested or formally accused.  Harris, 827 S.W.2d
at 956.  Before reaching the other
three Barker v. Wingo factors, a court must
determine that the length of delay was unreasonable and prejudicial to the
defendant.  Lott, 951 S.W.2d at 493.

Appellant was
arrested on February 6, 2000 and indicted on February 11, 2000.  Initially, the trial was set for June 12,
2000, but the trial was apparently reset for October 30, 2000 and January 16,
2001, and again continued to February 26, 2001 after Appellant=s counsel filed a motion to withdraw on
June 15, 2000 and new counsel was appointed on June 21, 2000.  Appellant=s
case was disposed of within a year and twenty days from his arrest, which was
not an unreasonable length of time under the circumstances and insufficient to
trigger the analysis of the remaining Barker v. Wingo
factors.  See Emery v. State, 881 S.W.2d 702, 708 (Tex.Crim.App.
1994).  We hold that Appellant=s trial was held within a reasonable
amount of time and overrule Appellant=
seventh issue.

The judgment of
the trial court is affirmed.

 

 

 

July
11, 2002

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)  











[1]
AJune Smith@
is a pseudonym for the complainant in this case.