Ora David LOTT, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–96–00197–CR.

Court of Appeals of Texas,
El Paso.

July 31, 1997.

Rehearing Overruled Sept. 3, 1997.

David Richard Bires, Houston, for Appellant.

Calvin A. Hartmann, Assistant District Attorney, Houston, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

This is an appeal from a conviction for the offense of murder. The appellant, Ora David Lott, pleaded guilty to the trial court. The court sentenced Lott to ten years' confinement in the Texas Department of Criminal Justice—Institutional Division. We affirm the judgment of the trial court.

## FACTUAL SUMMARY

On July 19, 1964, Alfonso Orosco, Sr. was shot and killed during a robbery of his wholesale beer business in Houston, Texas. Houston police officers took statements from witnesses to the shooting, and from witnesses who had observed a man leave his car parked a few blocks from the crime scene just prior to the shooting. Officers learned that the car was registered to Lott, and that Lott had a previous criminal record. A picture and description of Lott from the previous offense report matched the descriptions given by witnesses to the shooting.

Despite investigating and interviewing Lott's relatives and friends, and checking with agencies in Louisiana and California where Lott was known to have relatives and contacts, Houston police were unable to find Lott. On August 20, 1964, a federal warrant was filed against him for unlawful flight to avoid prosecution. An FBI investigation conducted from 1964 through 1970 included research through Lott's relatives and contacts, reviews of Lott's relatives' telephone records, placement of posters and notifications nationwide, investigation through trade unions and agencies nationwide, and additional investigations concentrated in California, Florida, and Louisiana. Neither the FBI nor the Houston police located Lott, and the federal and state indictments were dismissed in 1970. For reasons not clear from the record, the State reindicted Lott in 1972 and again attempted to locate him. The record is also unclear on the duration of, and the procedures followed, during the 1972 search. The record does establish that Lott was entered in the national and state crime

information computer records at that time, and that he remained listed as "wanted" on the network until 1994.

In June 1981, the victim's son asked for information about the investigation. Dan McAnulty, who was then a detective for the Houston Police Department, began a renewed search for Lott. Although he did not attempt to talk to the original investigating officers, McAnulty did attempt to track down Lott's relatives and contacts listed in the investigation file. He checked the national and Texas crime information computer networks, but found only the Houston Police Department's posting indicating that Lott was wanted. He also tried unsuccessfully to find Lott through the military, using a military identification number he found on Lott's previous rap sheet.[1] McAnulty ran searches for arrest and driver's license records in Louisiana, Mississippi, Alabama, Texas, Florida, and California, but found nothing. He also sent inquiries including a photograph of Lott and a request for fingerprint searches to law enforcement agencies in the same states in case Lott had been arrested under an alias in those jurisdictions. All of the state agencies from which McAnulty requested assistance cooperated with him, but none had any record of Lott. After his investigation, McAnulty formed the opinion that Lott was dead.

In the fall of 1993, the victim's son again inquired about the investigation. C.P. Abbondandolo of the Houston Police Department homicide division was assigned to review the file and meet with the family. When Abbondandolo found that Lott had never been apprehended, he began yet another search for him. Abbondandolo enlisted the help of the police analysis division to check nationwide computerized records such as credit card, employment, medical, and military records. Lott did not turn up on any of the computer searches. Abbondandolo was able to track down Lott's sister, Gloria Allen, and brother, Fred Lott, but each claimed no knowledge of Lott's whereabouts. When he attempted to contact the military directly, Abbondandolo learned that the military identification number from Lott's previous rap

sheet was incorrect. With the correct number, Abbondandolo was able to obtain Lott's Veterans' Administration number. The VA, however, did not cooperate with Abbondandolo's request for information on Lott.

Meanwhile, Abbondandolo had placed a story about the unsolved murder on a local television station. John Bertolini, a Houston police officer assigned to the Gulf Coast Task Force, saw the story and offered assistance. The Task Force combines local law enforcement agencies and United States Marshals in a joint effort to locate fugitives. Using contacts he had within the Veterans' Administration, Bertolini was able to put information about Lott on the VA's nationwide E-mail or "bill board" system. On September 29, 1994, Bertolini received word that Lott was undergoing treatment for a severe illness at the VA hospital in New Orleans. After fighting extradition, Lott was returned to Houston on January 13, 1995.

Lott had been working under an assumed name in New Orleans until 1984 when he told his employer that his real name was Ora Lott. The employer had used Lott as contract labor without reporting to the IRS and had cashed Lott's paychecks at the office for him. The employer did not believe Lott had a driver's license because he had never seen Lott drive, and he had given Lott rides home from work. Lott's employer testified that Lott had been in contact with his siblings over the years.

On August 28, 1995, Lott filed a demand for speedy trial. The trial court heard evidence on Lott's motion to dismiss based on the denial of a speedy trial, and overruled the motion on October 31, 1995. Pursuant to a plea bargain agreement, Lott pleaded guilty to the offense of murder with malice aforethought on April 18, 1996. Following the terms of the agreement, the trial court sentenced Lott to ten years' confinement in the Texas Department of Criminal Justice—Institutional Division. With the trial court's permission, Lott appeals the denial of his motion to dismiss.

1. None of the investigations turned up a social security number for Lott.

## SPEEDY TRIAL

In his sole contention on appeal, Lott maintains in two points of error that he was denied his right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Texas Constitution. The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The same right is provided to an accused under the Texas Constitution. TEX. CONST. art. I, § 10; *Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App. 1985).

### Barker v. Wingo Analysis

■ The framework for Sixth Amendment speedy trial analysis was set forth by the United States Supreme Court in *Barker v. Wingo. See Emery v. State*, 881 S.W.2d 702, 708 (Tex.Crim.App.1994). No definite period of time has been held to be a per se violation of a defendant's right to a speedy trial; alleged violations are considered on a case by case basis. *Emery*, 881 S.W.2d at 708, *citing Barker v. Wingo*, 407 U.S. at 529–30, 92 S.Ct. at 2191–92. When engaging in the *Barker v. Wingo* balancing test, the reviewing court must consider four factors:

(1) the length of the delay;

(2) the reason for the delay;

(3) whether the defendant asserted his speedy trial rights; and

(4) any resulting prejudice to the defendant.

*Emery*, 881 S.W.2d at 708, *citing Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2191. None of the four factors alone is a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *See Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193.

### Application of the Factors

*1. Length of the Delay*

■ The defendant has the burden of first showing that sufficient delay has occurred to require application of the *Barker v.*

*Wingo* balancing test. *Ramirez v. State*, 897 S.W.2d 428, 431 (Tex.App.—El Paso 1995, no pet.); *State v. Hernandez*, 830 S.W.2d 631, 635 (Tex.App.—San Antonio 1992, no pet.). The length of the delay is measured from the time the defendant is arrested or formally accused. *Harris v. State*, 827 S.W.2d 949, 956 (Tex.Crim.App.1992), *citing United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). To some extent, the length of the delay is a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is, *prima facie*, unreasonable under the existing circumstances. *Harris*, 827 S.W.2d at 956, *citing Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192. There must be enough of a delay to be presumptively prejudicial to the defendant before it becomes necessary to consider the other three factors in the *Barker* analysis. *Emery*, 881 S.W.2d at 708; *Lazcano v. State*, 836 S.W.2d 654, 657 (Tex. App.—El Paso 1992, pet. ref'd). Lott's case was not disposed of until more than thirty years after his original indictment, and more than twenty years after the second indictment. A delay of this length is clearly sufficient to require us to consider the remaining factors.

*2. Reason for the Delay*

■ The State has the initial burden of justifying a lengthy delay. *Emery*, 881 S.W.2d at 708; *Turner v. State*, 545 S.W.2d 133, 137–38 (Tex.Crim.App.1976). In light of a silent record or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for delay existed. *Id.* at 137–38. In examining the reasons for the delay, different weights should be assigned to different reasons. *Emery*, 881 S.W.2d at 708. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the State. *Id.* Courts should weigh a more neutral reason such as negligence or overcrowded dockets less heavily, but nevertheless should consider neutral reasons since the ultimate responsibility for such circumstances must rest with the State rather than with the defendant. *Id.*

The State offers Lott's fugitive status as explanation for the delay in his prosecution. Lott undoubtedly bears at least some fault for the length of the delay. He argues, however, that the State was negligent in its attempts to locate him, and the delay should therefore weigh against the State rather than against him. Lott cites three cases which he claims are analogous to this case and illustrate negligence in the investigation and search: *Doggett v. U.S.*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *Pierce v. State*, 921 S.W.2d 291 (Tex.App.—Corpus Christi 1996, no pet.); and *Branscum v. State*, 750 S.W.2d 892 (Tex.App.—Amarillo 1988, no pet.). In each of these cases, the courts determined that the prosecution had not used reasonable efforts to locate the defendant. We find each of these cases distinguishable, however, because in each of these cases there was some evidence that the prosecution knew where the defendant could be located, but failed to check on the defendant's status. *See Doggett*, 505 U.S. at 649–50, 112 S.Ct. at 2689 (government negligent because it knew fugitive was held in prison in Panama on drug charges, but failed to check status with Panamanian government; fugitive was released and fled to Columbia); *Pierce*, 921 S.W.2d at 294 (Nueces County prosecution negligent because prosecution had correct Houston address for defendant but made no attempts to locate defendant there; arrest warrant listing correct Houston address for defendant was never served; and defendant was stopped in Houston for traffic violations twice after warrant issued, and renewed driver's license in Houston after warrant issued, without arrest); *Branscum*, 750 S.W.2d at 893–94 (prosecution negligent because State knew defendant was in Oklahoma mental hospital and assumed, without checking, that defendant was incompetent to stand trial).

There is no such evidence of negligent failure to follow reasonable leads in this case. Lott's claim is essentially that the State was negligent because there were long periods of inactivity between the investigations. He maintains that had the investigation persisted continually, or even periodically, over the years following the murder, Lott would have been detected in the Veterans' Administration system when he first received treatment at a VA facility in 1986. The question Lott raises is essentially: Did the State display a lack of diligence by discontinuing active investigation of this case after 1970 and again after 1981? The trial court answered that question in the negative. An appellate court will not disturb the trial court's ruling on a motion to dismiss an indictment absent an abuse of discretion. *See Simon v. State*, 624 S.W.2d 411, 413–14 (Tex.App.—Dallas 1981, pet. ref'd)(trial court's refusal to grant alternative relief of dismissal on speedy trial claim not an abuse of discretion). The evidence supports the trial court's ruling. Lott admits in his brief that this case was diligently investigated for the first six years after the murder. By 1970, the trail had grown cold and the investigation halted. The trial court, in its discretion, was entitled to conclude that halting a diligent investigation after six years with no results was a reasonable, rather than a negligent, act. In 1972, the Houston Police Department made another unsuccessful attempt to locate Lott, and Lott was placed on the national and state computer networks. The Department attempted to find Lott again in 1981 and 1994. Although these last two attempts might never have been made without inquiry from the victim's family, they were conducted with some persistence. In 1981, Officer McAnulty, finding no trace of Lott despite diligent searches of general as well as criminal computer records and inquiries to law enforcement agencies in other jurisdictions, concluded that Lott must be dead. In light of the additional evidence that Lott was living under an assumed name, had no driver's license, and was working for an employer who paid him as contract labor and cashed his checks for him during the time period McAnulty was making his search, the trial court could have reasonably concluded that McAnulty's determination, although ultimately proven incorrect, was sensibly made after diligent inquiry. The trial court therefore could have reasonably concluded that the Houston Police Department's failure after 1981 to continue the search for a person presumed dead did not equate to a lack of diligence. It logically follows that the State's

failure to continue with an active investigation which might have detected that Lott had "surfaced" under his own name in order to receive veterans' benefits in 1986 stemmed not from a lack of diligence, but from Lott's own crafty, and successful, twenty-year-old disappearing act.

Moreover, there is no evidence that Lott sought any VA treatment between 1964 and 1970, when the trail was not so cold, and the prosecution was not so old. There is some evidence that the VA did not cooperate with the Houston Police Department until Officer Bertolini sought the help of friends within the Administration. Finally, the VA records were only one of many search avenues attempted by the Houston Police Department over the course of thirty years and four investigations. That the Department may not have explored this single avenue to the fullest extent possible does not render the overall search for Lott unreasonable or negligent.

Further, we find it significant under the facts of this case that the Department maintained Lott's name on the national and state computer crime data banks. Although simply maintaining a suspect's name on the computer crime records may not, in itself, show diligent investigation, in a case such as this where a diligent active investigation continued for a reasonable time after the offense, the data bank listing takes on added significance. When all leads have been exhausted, and all diligent efforts to locate a fugitive have proved fruitless, as appears to be the case here, the only remaining available means of investigation is to maintain the suspect's information on the computer data banks. Under the facts of this case, the trial court could have found that the Houston Police Department exercised, and continued for over twenty years to exercise, an investigation of last resort by maintaining Lott's name on the computer data banks. We do not find that the trial court abused its discretion in coming to this conclusion. Thus, we find that the record adequately supports the State's explanations. Since the delay is due largely to Lott's actions, this factor does not weigh heavily against the State. *See Dickey*

*v. Florida,* 398 U.S. 30, 48, 90 S.Ct. 1564, 1574, 26 L.Ed.2d 26, 38 (1970).

### 3. Assertion of the Right to a Speedy Trial

Lott did not raise a speedy trial complaint until August 1995, more than thirty years after his original indictment. A defendant's failure to timely demand a speedy trial indicates strongly that he did not really want one. *Harris,* 827 S.W.2d at 957; *Pierce,* 921 S.W.2d at 295. Lott argues, however, that there is no evidence that he knew of the charges pending against him. Without the defendant's knowledge of the pending charges, failure to assert the right does not weigh heavily against the defendant. *Doggett,* 505 U.S. at 654–55, 112 S.Ct. at 2691–92. The record, however, contains evidence strongly implicating Lott's knowledge of the pending charges. Law enforcement officers testified that they interviewed Lott's siblings during both the 1964 and 1994 investigations. The siblings therefore knew that Lott was wanted in connection with the murder. There is further evidence in the record that Lott was in contact with his siblings throughout his time as a fugitive. There is even evidence that Lott's brother, Fred Lott, paid Lott's rent in New Orleans in the late 1980's or early 1990's. Lott chose to live and work under an assumed name for more than twenty years. From this evidence, it is reasonable to presume that Lott, through his siblings, knew that he was the target of an investigation into the murder. It is also reasonable to presume that Lott's siblings continued to assist Lott through the years in his attempts to evade capture. The evidence thus supports a finding that Lott, knowing of the charges, chose to remain at large for more than thirty years without ever demanding a trial. Accordingly, we do not weigh this factor in Lott's favor.

### 4. Prejudice

Finally, we must determine whether Lott suffered prejudice as a result of the delay. A mere passage of time is not prejudicial and will not result in a denial of speedy trial. *Oliver v. State,* 731 S.W.2d 149, 159–60 (Tex.App.—Fort Worth 1987, pet ref'd). Prejudice must be assessed in the

light of the interests the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Harris,* 827 S.W.2d at 957. We will discuss the elements in reverse order. The State concedes that the passage of thirty years has impaired Lott's ability to defend against the murder charges. Our determinations that Lott is himself responsible for the delay and that Lott failed to demonstrate any desire for a speedy trial, however, leads us to the inevitable conclusion that the prejudice to Lott's defense is self-inflicted. Moreover, Lott fought extradition after his arrest in New Orleans. Lott's refusal to waive extradition thereby delaying transfer back to Texas is an indication of a low level of anxiety and concern about promptly disposing of the case. *See Burton v. State,* 805 S.W.2d 564, 573 (Tex.App.—Dallas 1991, pet. ref'd). Finally, Lott was not incarcerated for the thirty-year period between the original indictment and the final resolution of this case. Lott's case was finally disposed of within eight months after his first, and only, demand for a speedy trial. Accordingly, we do not weigh the prejudice factor heavily in Lott's favor.

## CONCLUSION

After balancing the above factors, we conclude that the State is not responsible for denying Lott his right to a speedy trial. Under the circumstances, the State acted with reasonable diligence in finding Lott and bringing his case to trial. Accordingly, Lott's points of error are overruled and we affirm the judgment of the trial court.