Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





CARL WELLS,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-05-00101-CR

Appeal from the

34th District Court

of El Paso County, Texas 

(TC# 20030D03878)



 

 

 




O P I N I O N

            Carl Wells appeals his conviction of three counts of delivery of a controlled substance. A
jury found Appellant guilty of delivery of heroin (Count I), and delivery of cocaine (Counts II and
III), and the court assessed punishment at imprisonment for five years on Count I, twenty-five years
on Count II, and five years on Count III. Finding no speedy trial violation, we affirm.
FACTUAL SUMMARY
            In August of 2002, Adan Chavez, an El Paso police officer, began working in the narcotics
division. Because he was young and could play the role of a high school student, Chavez was
assigned to work undercover at an El Paso high school. Chavez’s assignment required him to target
those subjects who were dealing narcotics. He attended classes each day and attempted to purchase
narcotics after school. Two other police officers, Michael Cortez and Jeffery Castillo, were also
assigned to perform the same assignment in different high schools.
            On January 2, 2003, the three officers were advised during a briefing about narcotics activity
on the 500 block of Missouri, so they went to that location with the goal of making a purchase. They
drove around the block and parked the vehicle in front of Appellant and another African-American
male who were standing outside of a residential area. As they parked, Appellant remained outside
but the other man went inside of the building. Appellant asked them if they wanted to score and they
indicated that they did. Appellant advised them that the area was “hot” and asked them to drive
around the block. The officers drove around the block and when Appellant reappeared, Chavez gave
him $25 in exchange for a white piece of paper containing cocaine. Appellant told them that if they
needed anything else to return and ask for Carlos. After the officers returned to the police station,
they were able to identify Appellant as Carl Wells by looking through their computer system and
finding a photograph.
            The officers returned to the same location on January 7, 2003. They circled the block a few
times before parking. Appellant approached the vehicle and asked them what they wanted to buy. 
The officers said they wanted to buy an “eight ball” which is street slang for 3.3 grams of cocaine. 
After some discussion, Appellant went into the residential building and exited with another African-American man who identified himself as Robert Starr. They advised the officers that they had to
drive to a different location to get the cocaine. Both men got in the car with the officers, and they
traveled to a church parking lot. Officer Cortez gave Starr $110 before he exited the vehicle. Starr
went to a pay phone and after a short time a young man on a skateboard


 approached Starr and gave
him something. Starr came back to the vehicle and gave a yellow plastic baggie to Appellant. 
Appellant then handed the baggie to Officer Cortez. They drove back to the Missouri location to
drop off Appellant and Starr.
            On January 17, 2003, Officers Chavez, Castillo, and Cortez returned to the same location to
purchase heroin. Appellant approached their vehicle and asked them what they wanted to buy. After
Castillo told Appellant that they wanted to purchase heroin, Appellant went inside of the residential
building. When Appellant returned, he got inside of the vehicle and sat down next to Castillo who
was in the backseat. Appellant reached into his right front pocket, retrieved a small foil-wrapped
paper containing heroin, and handed it to Castillo. Castillo gave Appellant $25 for the heroin.            Jerome Ponder provided an alibi for Appellant. Ponder is a truck driver for nine months each
year, but during the winter months he does home repairs for a real estate company. In December of
2002, Ponder hired Appellant to work with him on a particular house and they worked together
twelve hours a day until sometime in February of 2003. Because Appellant was homeless and
Ponder only paid him $25 per day, he either stayed in the house they were working on or he stayed
at Ponder’s house. The prosecution impeached Appellant with prior convictions for theft by check
and possession of cocaine. He was also on deferred adjudication probation for assault family
violence.
            Robert Starr also testified on Appellant’s behalf. Starr admitted that he had entered a plea
of guilty to delivery of cocaine for an offense that took place on January 6, 2003. Starr was standing
outside of his apartment complex on Missouri Street when three young men in a car drove up and
said they wanted to purchase some cocaine. The young men appeared to be high school students. 
Starr went across the street and got the woman who had the drugs. The young men negotiated the
transaction with the woman and she gave Starr the cocaine to give to them. Starr denied taking any
money from the young men. He denied knowing Appellant and said that this was the only drug
offense he had committed other than a 1972 offense in Wichita, Kansas.
            The jury rejected Appellant’s defense and found him guilty of each count.
SPEEDY TRIAL
            In his sole issue, Appellant asserts that the trial court erred by overruling his motion to
dismiss for lack of a speedy trial. Although the offenses took place in January of 2003, Officer
Chavez did not seek an arrest warrant until May 1, 2003 because they did not want to blow the cover
of the undercover officers. Sergeant Enrique Carrillo presented the cases to the District Attorney’s
Office the following month on June 17, 2003. Sgt. Carrillo did not ask that an arrest warrant be
issued because Appellant was incarcerated in TDCJID because his parole had been revoked in March
of 2003. A grand jury returned the three count indictment on August 19, 2003, but a detainer was
not placed on Appellant nor was he otherwise notified that an indictment had been returned.
            Appellant remained in TDCJID until June of 2004 when he was released to a halfway house
in El Paso. Appellant was arrested on the charges at issue in this case on August 17, 2004 as he was
being released from the halfway house. The trial court appointed counsel on August 31, 2004 and
gave Appellant a setting date of January 12, 2005. Appellant filed a motion to dismiss for lack of
a speedy trial on December 13, 2004, and the court conducted a hearing on the motion on January
21, 2005. The court denied the motion and Appellant’s case was tried on February 15-16, 2005.
Standard of Review
            The right to a speedy trial is guaranteed by the Sixth Amendment to the United States
Constitution. Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972);
Ramirez v. State, 897 S.W.2d 428, 431 (Tex.App.--El Paso 1995, no pet.). When analyzing a trial
court’s decision to grant or deny a speedy trial claim, we must balance four factors: (1) the length
of the delay; (2) the reason for the delay; (3) whether the defendant asserted his speedy trial rights;
and (4) any resulting prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. at 2192; Emery
v. State, 881 S.W.2d 702, 708 (Tex.Crim.App. 1994). None of the four factors alone is a necessary
or sufficient condition to finding a deprivation of the right to a speedy trial. Barker, 407 U.S. at 533,
92 S.Ct. at 2193. We apply a bifurcated standard of review: an abuse of discretion standard for the
factual components, and a de novo standard for the legal components. Zamorano v. State, 84 S.W.3d
643, 648 (Tex.Crim.App. 2002). This means that we independently weigh and balance the Barker
factors, but we presume the trial court resolved any disputed fact issues in a manner that supports
its ruling. Id.; State v. Munoz, 991 S.W.2d 818, 821 (Tex.Crim.App. 1999).
Length of Delay
            The length of the delay is measured from the time the defendant is arrested or formally
accused. Shaw v. State, 117 S.W.3d 883, 889 (Tex.Crim.App. 2003); Emery, 881 S.W.2d at 708.
To trigger a speedy trial analysis, the defendant has the burden of first demonstrating a delay of
sufficient length to be considered presumptively prejudicial under the circumstances of the case.
Barker, 407 U.S. at 530, 92 S.Ct. at 2192; Emery, 881 S.W.2d at 708. The defendant meets his
burden by showing that the interval between accusation and trial has crossed the threshold dividing
ordinary delay from presumptively prejudicial delay. Doggett v. U.S., 505 U.S. 647, 651-52, 112
S.Ct. 2686, 2690, 120 L.Ed.2d 520 (1992). Only then does it become necessary to consider the other
three factors in the Barker analysis. Emery, 881 S.W.2d at 708; Lott v. State, 951 S.W.2d 489, 493
(Tex.App.--El Paso 1997, pet. ref’d). In general, delay approaching one year is sufficient to trigger
consideration of all the Barker factors. Shaw, 117 S.W.3d at 889.
            Here, the eighteen-month delay between indictment and trial is sufficient to trigger analysis
of the remaining Barker factors. See Shaw, 117 S.W.3d at 889. While the delay extends beyond the
minimum required to trigger a Barker analysis, the delay is not so excessive that it would require us
to assign a heavier weight to this factor. See Dragoo v. State, 96 S.W.3d 308, 314 (Tex.Crim.App.
2003). Consequently, we will weigh this factor in favor of finding a speedy trial violation, but not
heavily so. See Doggett, 505 U.S. at 652, 112 S.Ct. at 2691 (court must consider the extent to which
the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.) 
Reason for Delay
            The State has the initial burden of assigning reasons to justify a lengthy delay. Emery, 881
S.W.2d at 708. In examining the reasons for the delay, we accord different weights to various
reasons. Barker, 407 U.S. at 531, 92 S.Ct. at 2192; Dragoo, 96 S.W.3d at 314. A deliberate attempt
to delay the trial in order to hamper the defense should be weighed heavily against the State. Barker,
407 U.S. at 531, 92 S.Ct. at 2192; Emery, 881 S.W.2d at 708. Valid reasons justify the delay and are
not weighed against the State at all. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. And delay that is
attributable in whole or in part to the defendant may constitute a waiver of the speedy trial claim. 
Munoz, 991 S.W.2d at 822. When the record is silent as to the reason for the delay, we may presume
neither a valid reason nor a deliberate attempt to prejudice the defense. Dragoo, 96 S.W.3d at 314.
            The record before us reflects that, following the revocation of his parole, Appellant was
incarcerated in TDCJID from March of 2003 through June of 2004 and he was released to a halfway
house in El Paso County where he remained until August 17, 2004. Even though the State did not
seek to place a detainer on Appellant, the record further does not indicate that the State’s failure to
secure Appellant’s presence was a deliberate attempt to delay the trial. To the contrary, the State was
prompt in bringing Appellant to trial following his arrest on the indictment. The burden of excusing
the delay rests with the State, and in light of a silent record or one containing reasons insufficient to
excuse the delay, we must presume that no valid reason for the delay existed. See Turner v. State,
545 S.W.2d 133, 137-38 (Tex.Crim.App. 1977). This weighs against the State, but absent evidence
of intent, we will not weigh the factor so heavily as we would were there evidence of intentional
conduct on the State’s part. See Barker, 407 U.S. at 531, 92 S.Ct. at 2192.
Assertion of Right to Speedy Trial 
            We next consider Appellant’s responsibility to assert his right to a speedy trial. Barker, 407
U.S. at 531, 92 S.Ct. at 2192. Assertion of the right is entitled to strong evidentiary weight in
determining whether the defendant was deprived of the right. Id. at 531-32, 92 S.Ct. at 2192-93.
This failure weighs more heavily against the defendant as the delay gets longer; the longer the delay,
the more likely a defendant who really wants a speedy trial would take some action to obtain it.
Dragoo, 96 S.W.3d at 314. Conversely, a defendant’s failure to assert his right in a timely and
persistent manner indicates strongly that he did not really want a speedy trial. Barker, 407 U.S. at
529, 532, 92 S.Ct. at 2191, 2193. Seeking a dismissal rather than a trial may attenuate the strength
of a speedy trial claim. Phillips v. State, 650 S.W.2d 396, 401 (Tex.Crim.App. 1983).
            Appellant testified that he requested a speedy trial at the time of his arraignment on August
17, 2004. The court’s docket sheet reflects that in early September 2004, the court appointed counsel
and gave Appellant a court date of January 12, 2005. There is no evidence that Appellant continued
to assert his right to a speedy trial or requested an earlier trial date. Instead, he filed a motion to
dismiss in December of 2004. Further, at the hearing on the speedy trial motion, he did not request
an immediate trial but instead sought dismissal. Appellant’s motivation in requesting a dismissal
rather than a prompt trial is relevant. See Phillips, 650 S.W.2d at 401. As the Court of Criminal
Appeals observed in McCarty v. State: “[I]t is fair to say his prime object was not to gain a speedy
trial, but was an attempt to have the charge against him dismissed.” McCarty v. State, 498 S.W.2d
212, 215-16 (Tex.Crim.App. 1973). This factor weighs against finding a speedy trial violation.
Prejudice Resulting from Delay
            Finally, we must determine whether Appellant suffered prejudice as a result of the delay. The
defendant bears the burden to make a prima facie showing of prejudice. State v. Munoz, 991 S.W.2d
818, 826 (Tex.Crim.App. 1999). If shown, the State must prove that “the accused suffered no
serious prejudice beyond that which ensued from the ordinary and inevitable delay.” Id. When a
court assesses the final factor, it must do so in light of the interests which the speedy trial right was
intended to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the defendant’s
anxiety and concern; and (3) to limit the possibility that the defendant’s defense will be impaired. 
Shaw, 117 S.W.3d at 890. Of these forms of prejudice, “the most serious is the last, because the
inability of a defendant adequately to prepare his case skews the fairness of the entire system.” Id. 
            We are not concerned with oppressive pretrial incarceration because Appellant was
incarcerated solely due to his parole revocation and not as a result of his indictment in this case. 
Further, there is no evidence that Appellant, after he learned of the indictment, suffered any anxiety
or concern beyond the level normally associated with being charged with a felony. See Shaw, 117
S.W.3d at 890. Finally, with respect to the third interest, Appellant contends he was prejudiced by
the delay because two witnesses, James Turner and Robert Garrett, could not be located, and another
witness who testified at trial, Robert Starr, had a poor memory.
            To claim prejudice because of a missing witness, Appellant must show that: (1) the
witnesses were unavailable at the time of trial; (2) their testimony would have been relevant and
material; and (3) he exercised due diligence in an attempt to locate the witnesses. Swisher v. State,
544 S.W.2d 379, 382 (Tex.Crim.App. 1976); Burgett v. State, 865 S.W.2d 594, 598 (Tex.App.--Fort
Worth 1993, pet. ref’d). Appellant’s investigator, Rose Pedregon, testified that, despite a diligent
effort, she could not locate either Turner or Garrett because neither had a permanent address. 
Appellant offered no evidence showing that the testimony of these two witnesses would have been
relevant or material to his defense. With respect to the witness Starr, Appellant complains that he
suffered from a poor memory as a result of the delay. Appellant did not, however, offer any evidence
at the speedy trial hearing to support this claim. Starr testified in detail at trial about a drug delivery
he committed and denied participating in any other offenses. We conclude that Appellant failed to
establish a prima facie case of prejudice due to the eighteen-month delay. Consequently, the fourth
factor weighs heavily against finding a speedy trial violation.
Weighing the Barker Factors
            The first two factors weigh in favor of finding a speedy trial violation, while the third and
fourth factors weigh against it. We conclude that the weight of the four factors, balanced together,
is against finding a violation of Appellant’s right to a speedy trial. See Barker, 407 U.S. at 534, 92
S.Ct. at 2194 (where defendant was not seriously prejudiced by five-year delay between arrest and
trial and he did not really want a speedy trial, his right to a speedy trial was not violated); Dragoo,
96 S.W.3d at 308 (where defendant demonstrated no serious prejudice by three-and-one-half-year
delay between arrest and trial and he waited until just before trial to assert his right to a speedy trial, 

his right to a speedy trial was not violated). We overrule Appellant’s sole issue and affirm the
judgment of the trial court.

                                                                        ANN CRAWFORD McCLURE, Justice

October 5, 2006

Before Barajas, C.J., McClure, and Chew, JJ.
Barajas, C.J., not participating

(Do Not Publish)