**Opinion issued June 9, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00367-CR

————————————

## REYNALDO ZAMORA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 22nd District Court
Hays County, Texas[*]
Trial Court Case No. 87-0140

## MEMORANDUM OPINION

---

[*] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. Misc. Docket No. 15-9054 (Tex. Mar. 24, 2015); *see* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases). We are unaware of any conflict between precedent of that court and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

A jury convicted Reynaldo Zamora of aggravated kidnapping. *See* TEX. PENAL CODE § 20.04. The trial court assessed punishment at 60 years in prison. Zamora appealed, and in his sole issue he contends that the trial court erred by denying his motion to dismiss for lack of a speedy trial.

The evidence presented to the trial court supported a conclusion that Zamora failed to timely demand a speedy trial, and no substantial prejudice resulted from the 26-year delay in this prosecuting this case, which largely was attributable to his own actions. Accordingly, we affirm the trial court's judgment.

## Background

In 1986, the complainant and a friend, both then girls under the age of ten, were walking down a street in Hays County, Texas. A white Corvette pulled up beside them, and the driver asked whether they knew the location of a mutual friend, Vera. The driver identified himself as "Ray Zamora" and claimed to be Vera's uncle. He asked the girls to help him find Vera, and they agreed. After driving around the town, he dropped the complainant's friend off at the same location where he had found them.

The complainant also attempted to leave the car, but Zamora pulled her by her hair and forced her to remain as he sped away. With one hand, Zamora grasped the complainant's chest under her shirt. With the other hand over her clothes, he touched and squeezed her vagina. Zamora then dropped the complainant off at her

bus stop, and he threatened that if she told anyone anything about the incident he would "come back for" her. The complainant nonetheless informed the police.

Zamora was arrested. The complainant and her friend were able to identify his white Corvette as the same one that their kidnapper drove. While the girls initially had difficulty identifying a suspect, they each selected Zamora's photograph from a photo lineup.

Zamora posted bond and was released from jail. He later testified that shortly thereafter he was involved in a car accident and was in a coma for 52 days, which caused him to forget his arrest. Zamora failed to appear in court, and a new warrant was issued for his arrest.

Twenty-seven years later, in 2013, Zamora was arrested on the outstanding warrant in Hays County. He filed a motion to dismiss the 1986 kidnapping charges against him due to violation of his right to a speedy trial. Zamora claimed that he had been arrested several times between 1986 and 2013, including arrests in Maverick County, Travis County, and the Commonwealth of Kentucky. He argued that at no point during these arrests, some of which resulted in convictions and imprisonment in state custody, was he made aware of the ongoing charges against him in Hays County, nor was any attempt made to bring him to trial there.

During his arrest in Maverick County in 1992, Zamora was found with multiple sets of identification cards, some of which were in the name of "Enrique

3

Mata Jimenez." Zamora appeared on the Maverick County charges as Enrique Mata Jimenez, and he applied for counsel as an indigent under the same name. Zamora claimed that "Jimenez" was the name of his Mexican brother, and he gave an alternate spelling of his name ("Jimmenz") when testifying in this case. At some point later, Zamora left custody without being paroled; an escape warrant from Maverick County identified his name as "Enrique Mata-Jimenez" but listed in the comments "Reynaldo Ybarra-Zamora." Zamora claimed that he did not escape custody in Maverick County, but instead he was brought to the border as an illegal immigrant and told to return to Mexico.

In his motion to dismiss the kidnapping charges, Zamora noted a few specific incidents when he was in custody, and he contended that Hays County was negligent in bringing him to trial. First, in 2000, Zamora was incarcerated in Kentucky, due in part to the fugitive warrant from Hays County, which failed to extradite him. Second, Zamora was incarcerated on other charges in Maverick County in 2002, under the same name and date of birth as listed in the Hays County warrant. He was paroled in 2005. Third, in 2007, he was arrested in Austin. His parole on the Maverick County conviction was revoked in 2008, only for him to be paroled again in 2010.

Zamora alleged that his kidnapping defense would be prejudiced by the lack of a speedy trial because he would not be able to secure alibi evidence from two

4

witnesses who had passed away. He specifically claimed that at the time he was alleged to have committed the kidnapping, he was working in Colorado with "Colonel Sanders" and "Dr. Darryl Havert." Zamora testified that both of these witnesses passed away in 2007. He argued that because he and his brother, Enrique Mata Jimenez, looked alike, that Jimenez probably had committed the kidnapping while using his identity. He also claimed that no one knew where his brother was, and he was incapable of finding him. Zamora provided no other proof of these assertions beyond his testimony.

At the hearing on the motion to dismiss, the State presented evidence that Zamora had a history of using different aliases and dates of birth when in custody. In addition to his appearance as "Enrique Mata Jimenez," he would alternate between spelling his name as "Raynaldo" and "Reynaldo," switch his middle and last names, and give his date of birth as being in either 1954 or 1958.

The State stipulated that a number of items of evidence relating to the case were missing. These included items purchased from a gas station while Zamora was with the two girls, hair samples and fingerprints from the girls, the original fingerprint card taken from Zamora during the 1986 arrest, photos of the Corvette, hair samples taken from the Corvette, and the girls' original recorded statements. The State also conceded that the hair samples taken from the Corvette did not match the girls' samples, and thus was exculpatory evidence.

5

The trial court denied the motion to dismiss, and wrote on the docket sheet that the delay was attributable to Zamora's "own actions, lack of previous request for speedy trial" and that there was a "lack of prejudice" to him under the circumstances.

After Zamora's initial motion to dismiss but before voir dire, the State admitted that the Department of Criminal Justice Parole Division had sent a request to Hays County in 2010, asking about the status of the kidnapping cases. However, Hays County was unable to locate the file on the kidnapping charges, and at that time it was able to locate only the indictment, motion for continuance, and capias warrants. The State conceded that it was unable to replicate the file until 2013. Zamora asked the court to reconsider the motion for to dismiss, but the trial court once again denied the motion.

A jury convicted Zamora of aggravated kidnapping. The court assessed punishment at 60 years' imprisonment. Zamora moved for a new trial, claiming that the trial court erred by denying his motion to dismiss for lack of a speedy trial. The motion was overruled by operation of law, and Zamora appealed.

**Analysis**

We review a trial court's ruling on a claim of a denial of the right to a speedy trial under a bifurcated standard: we review the trial court's factual determinations for abuse of discretion, and its legal determinations de novo.

6

*Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Because the trial court denied the motion to dismiss, we assume that the trial court resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports. *Id.* When assessing the evidence presented at a hearing on a motion to dismiss for lack of a speedy trial, the trial court may completely disregard a witness's testimony based on credibility and demeanor evaluations, even if the testimony is uncontradicted, and it may disbelieve any evidence as long as there is a reasonable and articulable reason for doing so. *McGregor v. State*, 394 S.W.3d 90, 113 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

The Sixth Amendment to the United States Constitution guarantees the accused a speedy trial, and the sole remedy when the accused is deprived of this right is dismissal. *See* U.S. CONST. amend. IV; *Barker v. Wingo*, 407 U.S. 514, 522, 92 S. Ct. 2182, 2188 (1972). To determine whether the appellant has been deprived of this right, we weigh and balance the four factors the Supreme Court set forth in *Barker v. Wingo*, 407 U.S. 514 (1972): "1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused." *Id.* at 530, 92 S. Ct. at 2192; *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The State generally has the burden of justifying the length of the delay, while the defendant has the burden of proving assertion of the right and showing prejudice.

*Cantu*, 253 S.W.3d at 280. The greater the State's bad faith or negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial. *Id.* at 280–81.

## I.     Length of the delay

The length of the delay acts as a "triggering mechanism" that precludes further review unless the delay is presumptively prejudicial. *See Barker*, 407 U.S. at 530, 92 S. Ct. at 2192. The length of the delay that will provoke a speedy trial inquiry is "necessarily dependent upon the peculiar circumstances of the case." *Id.* at 530–31, 92 S. Ct. at 2192. So long as the delay is more than "ordinary" it is subject to the speedy trial analysis, and the longer the delay, the greater the presumption of prejudice to the defendant. *Zamorano*, 84 S.W.3d at 649.

In this case, the State concedes that the 26-year delay between Zamora's arrest and his prosecution "requires further inquiry," effectively conceding that the delay was presumptively prejudicial. *See McGregor*, 394 S.W.3d at 113. We agree that this delay was sufficient to trigger our analysis of the remaining *Barker* factors. The extreme length of the delay in this case "stretched well beyond the bare minimum needed to trigger judicial examination of the claim," and therefore this factor "weighs heavily against the State." *Zamorano*, 84 S.W.3d at 649.

## II. Reason for the delay

The State generally bears the burden of justifying the length of the delay in bringing a defendant to trial. *Cantu*, 253 S.W.3d at 280. A "deliberate attempt to delay the trial" is weighed heavily against the government, while a "more neutral reason such as negligence" is weighed less heavily. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (quoting *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192). However, "delay which is attributable in whole or in part to the defendant may even constitute a waiver of a speedy trial claim." *Id.*; *see also Webb v. State*, 36 S.W.3d 164, 173 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). A defendant's decision to remain a fugitive without asserting his right to a speedy trial weighs heavily against him. *Lott v. State*, 951 S.W.2d 489, 495 (Tex. App.—El Paso 1997, pet. ref'd). The inquiry is not whether one party is solely to blame, but rather "whether the government or the criminal defendant is more to blame for that delay." *Doggett v. U.S.*, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992).

Zamora asserts that the State's negligence in bringing him to trial should weigh against it in the *Barker* analysis. The State responds that Zamora's extensive use of aliases constitutes a waiver of the right to speedy trial, and the delay in trying him was due to his own actions.

In this case, the trial court reasonably could have concluded that the delay from 1986 until 2002 was largely attributable to Zamora. It was Zamora's decision

to leave the county while a charge was pending against him, to use the alias of his brother in other court proceedings, and to change the spelling of his name and his date of birth in both his official documents and in subsequent arrests. Based on this record, the trial court reasonably could have found as a matter of fact that the State's inability to apprehend Zamora for the kidnapping was due to his active effort to evade arrest and prosecution during this time. *See Lott*, 951 S.W.2d at 495.

The State's negligence in failing to apprehend Zamora was more readily apparent from 2002 onward, when he was in the State's custody under the same name and date of birth given in the Hays County warrant. The State admitted at trial that its failure to charge Zamora during this period would suggest its negligence in the length of the delay. Negligence weighs against the State when considering the reason for the delay. *See Munoz*, 991 S.W.2d at 822.

However, the trial court nevertheless could have concluded that these difficulties were based in part upon the long interval when Hays County was unable to locate Zamora because of his evasion of prosecution. The passage of time also led to the loss of the county's files on Zamora, resulting in their difficulty in obtaining evidence against him. Accordingly, the trial court acted within its discretion to find that this factor weighed in favor of the State, rather than Zamora.

*See Doggett*, 505 U.S. at 651, 112 S. Ct. at 2690; *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192 (valid reasons such as missing witnesses do not weigh against State).

## III.    Assertion of the right

A defendant has no duty to bring himself to trial; that duty is incumbent on the State. *Cantu*, 253 S.W.3d at 282. However, the defendant does have a responsibility to assert his right to a speedy trial. *Id.* A defendant's assertion of his speedy trial right, or his failure to assert it, is entitled to strong evidentiary weight in the speedy trial analysis. *Id.* at 283. A defendant's lack of a timely demand for a speedy trial "indicates strongly that he did not really want a speedy trial" and that he was not prejudiced by the lack of one. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). Access to counsel is one of the factors considered when determining whether a defendant has asserted the right to speedy trial. *See id.* at 314–15.

In this case, there is no record of Zamora asserting his speedy trial right until 2013. Instead, he left Hays County shortly after his arrest. There is nothing in the record to suggest that he returned to the county until he was arrested again in 2013. Even crediting Zamora's story that he forgot his initial arrest in 1986 due to a subsequent head injury, he was informed by the Kentucky courts in 2000 that there was a warrant for his arrest in Hays County. Zamora did nothing to assert his speedy trial right for the next thirteen years after he was aware of these charges,

despite the fact that he repeatedly had access to counsel for his other criminal charges during that time. *See id.* (access to counsel may be weighed when determining assertion of speedy trial right).

Furthermore, Zamora's use of aliases and his repeated attempts to evade custody support an implied finding by the trial court that, rather than asserting his speedy-trial right, he preferred to avoid trial as long as possible. *See Zamorano*, 84 S.W.3d at 648. We conclude the trial court reasonably could have determined that this factor weighs heavily against Zamora in the *Barker* analysis. *See Cantu*, 253 S.W.3d at 284.

## IV. Prejudice to the accused

The fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant. *Id.* at 285. We analyze prejudice based on the interests that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the possibility that the accused's defense will be impaired. *Id.* The last of these factors is the most serious, as it can have a material effect on the fairness of the trial as a whole. *Id.* "If witnesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193.

Zamora did not suffer pretrial incarceration for the offense in this case; he paid bail and was not thereafter incarcerated in Hays County until his arrest in

12

2013. Neither did he present any evidence of anxiety or concern about the charges against him. However, Zamora did assert prejudice to his defense. He claimed that he was unable to present two alibi witnesses who passed away during the interval when he was not imprisoned. He also asserted that he could not present his brother as a plausible alternative suspect because the brother had gone into hiding.

Zamora did not present any further evidence beyond his own testimony to support any of his claims regarding alibi witnesses. He did not produce any objective evidence about the deaths of the supposed alibi witnesses, Colonel Sanders or Dr. Darryl Havert. There was no further evidence beyond Zamora's bare assertion to support his claim that he was not in Texas during the kidnapping. The trial court was free to disbelieve Zamora's testimony entirely based on its assessment of his credibility. *See McGregor*, 394 S.W.3d at 113. Based on these implied factual conclusions, the trial court reasonably could have concluded there were no material defense witnesses actually lost as a result of the delay.

The State stipulated that further evidence was lost, but almost all of this evidence would have aided the prosecution rather than Zamora. The only exculpatory item was the forensic examination of the hair follicles from the Corvette, and the State stipulated that the results were in Zamora's favor. Based on the record, we cannot conclude that Zamora's defense was materially prejudiced

13

by the delay. We conclude that this factor does not weigh against either the State or Zamora. *See Cantu*, 253 S.W.3d at 285.

**Conclusion**

Based on our analysis of the *Barker* factors, one factor (the length of the delay) weighs in Zamora's favor, but two (the reason for the delay and assertion of the right) weigh against him, and the fourth does not add to either side. The evidentiary record shows that Zamora repeatedly evaded trial and failed to assert his speedy trial right. We conclude that the trial court correctly exercised its discretion by denying Zamora's motion to dismiss. *See Zamorano*, 84 S.W.3d at 648.

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Higley, Bland, and Massengale.

Do not publish.  TEX. R. APP. P. 47.2(b).