ACCEPTED
03-14-00578-CR
6527835
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/17/2015 3:29:19 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00578-CR

## COURT OF APPEALS

## FOR THE

## THIRD SUPREME JUDICIAL DISTRICT

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/19/2015 2:48:19 PM
JEFFREY D. KYLE
Clerk

---

**DANIEL RAYMOND VADNAIS,**
Appellant

**VS.**

**THE STATE OF TEXAS,**
Appellee

---

## APPEAL FROM

## THE 22ND JUDICIAL DISTRICT COURT

## HAYS COUNTY, TEXAS

## TRIAL COURT CAUSE NO. CR-13-0651

---

## STATE'S BRIEF

---

ORAL ARGUMENT IS
NOT REQUESTED

Whitney L. Borgman
Assistant Criminal District Attorney
712 S. Stagecoach Trail, Suite 2057
San Marcos, Texas 78666
Ph: (512) 393-7600 / Fax: (512) 393-2246
State Bar No. 24082224
whitney.borgman@co.hays.tx.us
Attorney for the State of Texas

# NAMES OF PARTIES

Appellee:                          State of Texas

Attorneys for the State:           Wesley H. Mau, «County» County District Attorney
   At trial:                       Kathleen Magee Arnold, Assistant Attorney General
   On appeal:                      Whitney L. Borgman
                                   Assistant Criminal District Attorney
                                   712 S. Stagecoach Trail, Suite 2057
                                   San Marcos, Texas 78666
                                   State Bar No. 24082224
                                   Attorney for the State of Texas


Appellant:                         Daniel Raymond Vadnais

Attorney for Appellant:
   At trial:                       Gerard McDermott, II
                                   8140 North Mopac
                                   Westpark 4, Suite 250
                                   Austin, Texas 78759

   On appeal:                      Dal Ruggles
                                   1103 Nueces
                                   Austin, Texas 78701

# TABLE OF CONTENTS

NAMES OF PARTIES ........................................................................................II

TABLE OF CONTENTS ...................................................................................III

INDEX OF AUTHORITIES..............................................................................V

STATEMENT OF THE CASE............................................................................2

STATEMENT REGARDING ORAL ARGUMENT............................................3

ISSUES PRESENTED........................................................................................3

STATEMENT OF FACTS...................................................................................4

SUMMARY OF THE ARGUMENT..................................................................14

ARGUMENT ....................................................................................................16

  STATE'S RESPONSE TO POINT OF ERROR ONE.......................................16
    THE TRIAL COURT PROPERLY DENIED APPELLANT'S MOTION
    TO DISMISS FOR VIOLATION OF HIS SIXTH AMENDMENT
    RIGHT TO SPEEDY TRIAL.

  STATE'S RESPONSE TO POINT OF ERROR TWO ....................................25
    APPELLANT WAIVED HIS 404(B) OBJECTION TO EVIDENCE OF
    HIS PRIOR FORGERY CONVICTION BY STIPULATING TO THE
    ADMISSIBILITY AND VERACITY OF THE EVIDENCE.

    THE ERROR, IF ANY, IN ADMITTING THE EXTRANEOUS
    OFFENSE WAS HARMLESS IN LIGHT OF THE LIMITING
    INSTRUCTION PROVIDED TO THE JURY AND THE
    OVERWHELMING EVIDENCE OF GUILT PRESENTED BY THE
    STATE.

  STATE'S RESPONSE TO POINT OF ERROR THREE .................................26
    APPELLANT FAILED TO RAISE A TIMELY 403 OBJECTION TO
    THE ADMISSION OF THE FORGERY CONVICTION AS REQUIRED
    TO PRESERVE ERROR, AND

    APPELLANT DID NOT SUFFER SUBSTANTIAL HARM AS A
    RESULT OF THE ADMISSION OF THE FORGERY CONVICTION.

  STATE'S RESPONSE TO POINT OF ERROR FOUR.....................................33
    THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S
    GUILTY VERDICT.

**CONCLUSION**..................................................................................................36

**PRAYER** ..........................................................................................................38

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. PROC.,
RULE 9.4** ..........................................................................................................38

**CERTIFICATE OF SERVICE** ........................................................................39

# INDEX OF AUTHORITIES

## FEDERAL CASES

*Barker v. Wingo,* 407 U.S. 514 (1972)...................................................... passim

*Doggett v. United States,* 505 U.S. 647 (1992)..........................................19

## CASES

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010)...........................33

*Bryant v. Texas,* 187 S.W.3d 397 (Tex. Crim. App. 2005)..................... 25, 26

*Burton v. State,* 805 S.W.2d 564 (Tex. App.—Dallas 1991, pet. ref'd)..................................................................................................... 19, 20

*Cantu v. State,* 253 S.W.3d 273 (Tex. Crim. App. 2008).................... 18, 19

*Carruth v. State,* 762 S.W.2d 364 (Tex. App.—Fort Worth 1998, no pet.)....................................................................................................28

*Cortez v. State,* No. 0501-14, 2015 WL 3776495 (Tex. Crim. App., June 17, 2015) ........................................................................34

*Dragoo v. State,* 96 S.W.3d 308 (Tex. Crim. App. 2003)..................... 21, 24

*Ex parte Cathcart,* 13 S.W.3d 414 (Tex. Crim. App. 2000) ........................18

*Gonzales v. State,* 435 S.W.3d 801 (Tex. Crim. App. 2014) ............. 16, 20, 22, 23

*Harris v. State,* 827 S.W.2d 949 (Tex. Crim. App. 1992).................... 18, 19

*Higginbotham v. State,* 356 S.W.3d 584 (Tex. App.—Texarkana 2011, pet. ref'd.)....................................................................................32

*Johnson v. State,* 932 S.W.2d 296 (Tex. App.—Austin 1996, pet. ref'd.)................................................................................................ 27, 28, 30

*Johnson v. State,* 967 S.W.2d 410 (Tex. Crim. App. 1998)................. 28, 33

*Lane v. State,* 933 S.W.2d 504 (Tex. Crim. App. 1996) ...........................27

*Lott v. State,* 951 S.W.2d 489 (Tex. App.—El Paso 1997, reh'g denied).................................................................................................17

*McCarty v. State,* 498 S.W.2d 212 (1973).................................................21

*Mechler v. State,* 153 S.W.3d 435 (Tex. Crim. App. 2005).................31

Montgomery v. State, *810 S.W.2d 372 (Tex. Crim. App. 1991)(op. on reh'g)* ................................................... 26, 27, 30, 31

*Montgomery,* 810 S.W.2d at 377 ...............................................................27

*Motilla v. State,* 78 S.W.3d 352 (Tex. Crim. App. 2002)....................27

*Nolen v. State,* 872 S.W.2d 807 (Tex. App.—Fort Worth 1994, pet. ref'd)....................................................................................................31

*Reed v. State,* 927 S.W.2d 289 (Tex. App.—Fort Worth 1996, no pet.)............................................................................................... 25, 30

*State v. Munoz,* 991 S.W.2d 818 (Tex. Crim. App. 1999) ............... passim

*State v. Tatom,* No. 05-14-01246-CR, 2015 WL 1735964 (Tex. App.—Dallas, Apr. 14, 2015)(mem. op., not designated for publication)...............................................................................................23

*Whitaker v. State,* 286 S.W.3d 355 (Tex. Crim. App. 2009)................27

*Zamorano v. State,* 84 S.W.3d 643 (Tex. Crim. App. 2002)........... 16, 17, 22

**STATUTES**

Tex. Pen. Code Ann. § 32.51(West 2011)......................................... passim

Tex. Penal Code Ann. § 32.21(West 2011) ..................................... 27, 30

TEX.R.APP.PROC. Rule 38.2..........................................................................1

**RULES**

Tex. Code Crim. Proc., art. 39.14 ............................................... 11, 12

Tex. R. Evid., Rule 403 ..................................................................... 15, 28

Tex. R. Evid., Rule 404 ........................................................................ passim

Tex.R.App.Proc., Rule 39.1 ..............................................................3

Tex.R.App.Proc., Rule 39.7 ..............................................................3

**TREATISES**

Lafave & Israel, Criminal Procedure § 18.2(b)(1984) ...............................18

NO. 03-14-00578-CR

COURT OF APPEALS

FOR THE

THIRD SUPREME JUDICIAL DISTRICT

---

DANIEL RAYMOND VADNAIS,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

---

APPEAL FROM

THE 22ND JUDICIAL DISTRICT COURT

HAYS COUNTY, TEXAS

TRIAL COURT CAUSE NO. CR-13-0651

---

**STATE'S BRIEF**

---

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

COMES NOW the State of Texas, by and through her Assistant District Attorney, Whitney L. Borgman, and files this Brief in Opposition to Appellant's Brief pursuant to Tex. R. App. Proc., Rule 38.2 and would show the Court the following:

## STATEMENT OF THE CASE

On or about November 25, 2012, Daniel Vadnais ("Appellant") was arrested for misdemeanor theft in Hays County, Texas. (C.R. 15, 60). Arising out of the same transaction as the misdemeanor theft, Appellant was indicted by a Grand Jury on August 7, 2013, for Fraudulent Use or Possession of Identifying Information 10 or more items but less than 50 items. (C.R. 6, 60). A capias was issued on August 14, 2013, and executed on February 4, 2014, at the State Jail Facility where Appellant was serving time for an unrelated offense. (C.R. 17, 61). Following Appellant's arraignment on April 22, 2014, the court held two pre-trial hearings whereby the case was reset by agreement of the parties as the parties continued plea negotiations. (C.R. 17, 61; 3 R.R. 28-30).

On August 11, 2014, the trial court denied Appellant's Motion to Dismiss for Violation of His Sixth Amendment Right to Speedy Trial and both parties announced ready for trial. (C.R. 114; 3 R.R. 27, 38; 4 R.R. 12). On August 13, 2015, the jury found Appellant guilty of the offense as alleged in the indictment. (5 R.R. 116).The court sentenced Appellant to ten years in the Institutional Division of the Texas Department of Criminal Justice. (5 R.R. 129-130). Appellant filed a notice of appeal on August 28, 2014, and these proceedings followed. (C.R. 88).

## STATEMENT REGARDING ORAL ARGUMENT

Appellant has requested oral argument in this case. The facts and legal arguments are adequately presented in the briefs and record, and oral argument would not aid the decisional process. *See* Tex. R. App. Proc. 39.1. However, should the court desire the parties to appear and argue, the State will appear for oral argument. *See* Tex. R. App. Proc. 39.7.

## ISSUES PRESENTED

1. Did the trial court properly deny Appellant's speedy trial motion when the actual length of delay was one year and Appellant wholly failed to present evidence of prejudice?

2. Did Appellant's stipulation to the admissibility of his prior forgery conviction waive his 404(b) objection?

3. Did the admission of the prior forgery create reversible error where a limiting instruction was provided to the jury at the time the evidence was published to the jury and the State presented overwhelming evidence of Appellant's guilt?

4. Did Appellant properly preserve error on his 403 objection to the trial court's admission of his prior forgery conviction when Appellant failed to post a timely objection?

5. If the court determines Appellant did in fact preserve error regarding the prejudicial nature of the prior forgery conviction, did Appellant suffer substantial harm?

6. Was the evidence sufficient to support the conviction when the State presented evidence of a minimum of 13 items of identifying information in Appellant's possession without the consent of the owners and expert testimony corroborating the number of items identifying information found in Appellant's possession?

## STATEMENT OF FACTS

### 1. Facts of the Offense

On or about November 25, 2012, Deputy Shaun Booth responded to a residential neighborhood for a reported verbal disturbance. (4 R.R. 22, 134-135, 146). Upon arriving, Booth spoke with neighbor Cathy Barnett, who indicated that Appellant was causing a disturbance and would not leave the neighborhood. (4 R.R. 23). Booth then observed Appellant across the street, in the driveway of 1011 Swallow Drive, speaking with James Griffin, the homeowner. (4 R.R. 25). Booth made contact with Appellant, and Appellant denied any verbal altercation, contrary to the statements made by Barnett moments earlier. (4 R.R. 23-26). Deputy Ronnie Torres soon arrived, and both Appellant and Griffin were separated so Booth and Torres could better pursue their investigation. (4 R.R. 27, 135, 138, 144).

While speaking with Griffin, Booth noticed a black, courier-style bag located in a corner near the garage track that looked out of place. (4 R.R. 29). Griffin indicated that the bag belonged to Appellant. (4 R.R. 30, 148; State's Ex. 1, 6). Appellant initially denied ownership of the bag, but admitted ownership after further questioning by Booth and Torres. *Id.* While questioning Appellant about the bag, Booth and Torres observed that Appellant was nervous, vague, evasive, and refused to make eye contact. (4 R.R. 31-32, 139-140, 142, 166).

After Appellant identified the bag as his, Booth asked Appellant multiple times if they could search the bag. (4 R.R. 32-33; State's Ex. 1). Appellant responded with inarticulate grunting noises. *Id.* Eventually, Appellant consented to the bag's search. (4 R.R. 32-33; State's Ex. 1, 6). After granting consent to search the bag but prior to the actual search, Appellant identified knives that were subsequently found inside the bag. (4 R.R. 108-109; 111; State's Ex. 11). After finding a wallet in the bag with Christopher White's driver's license and verifying that Appellant did not have permission to have White's wallet, the officers arrested Appellant for theft. (4 R.R. 65-66; C.R. 15, 60).

At trial, Deputy Booth testified that Appellant's bag contained various forms of identifying information, which were subsequently admitted without objection. (State's Ex. 1-5; 4 R.R. 35- 67). State's Exhibit 2, a manila envelope with all its contents, contained driver's licenses from Melissa Scintilla, Kenneth Clay, Margaret Willis, Jacob Shelly, Charles Dodson, Julian Ramon, and White's identification card. (4 R.R. 39-41). State's Exhibit 2 also contained Amelia Bryant's passport and social security card, checks belonging to Kelly Dorsey, Douglas Beard, Nathan Eisenburg, Jeffrey Ilschner, Steve Aldonado, Craig Toole, Austin Miles' immunization card, and a sticky note containing Misty Lynn's date of birth, name, and address. (4 R.R. 41-44).

Appellant's bag also contained a notebook with a list of names, social security numbers, dates of birth, addresses, phone numbers, and some driver's license numbers for fifteen different individuals: Sonia Gamboa, Brian Brown, Julio Ayala, Calvin Tooley, Jason Allison, David Gomez, Melissa Santilla, Jose Zapata, Jose Morales, Clay Snodgrass, Francisco Perez, Sunny Rathore, Miguel Angel Sanchez, Andrea Carrico, and Janet Brown. (4 R.R. 48-53, State's Ex. 3). Appellant's bag also contained Austin Miles' birth certificate. (4 R.R. 54-55; State's Ex. 3).

Booth found a series of receipts with Appellant's name on them that further connected Appellant with the bag. (4 R.R. 55-57; State's Ex. 3). Appellant's "to-do" list was also found within Appellant's bag: "TxDot; public data; optometrist; storage unit; Mercedes; lawyer; house; job; collect $; hotel room, file box, locals, superglue, flashlight, whiteout, car insurance, on-line banking, . . .safe deposit box, Bluetooth, headset, surveillance cameras, PayPal, Bluebird, Greendot, NetSpend." (4 R.R. 60; State's Ex. 3).

Appellant's bag also contained a small black book. (4 R.R 62-63; State's Ex. 4). The black book contained another list that said "separate IDs/ socials; run background checks, run credit checks, EIN numbers...." (4 R.R.64; State's Ex. 4). Finally, Appellant's bag contained White's wallet, including his driver's license, employee ID, and checks. (4 R.R. 65; State's Ex. 5).

White did not know Appellant prior to November 25, 2012. (4 R.R. 123). Appellant did not have White's consent to possess his driver's license, two credit cards, or employee ID card. (4 R.R. 116; State's Ex. 5). Appellant possessed checks with White's personal information on them, but the checks were not from White's bank. (4 R.R. 118-121; State's Ex. 5). Additionally, White examined hotel receipts that had his information on them, and testified that he had never stayed at the hotels, nor had he given anyone permission to use his information to stay at the hotels. (4 R.R. 122; State's Ex. 3).

Clay Snodgrass stated that he did not know Appellant. (4 R.R. 125). Snodgrass identified his name, address, driver's license number, date of birth, and social security number found in State's Exhibit 3. (4 R.R. 126-127). Snodgrass further testified that he had never given Appellant consent to use his name, social security number, driver's license number, date of birth, or address. *Id.*

Janet Brown did not know Appellant and had not given him permission to have her identifying information. (4 R.R. 128-129). Brown confirmed her name, address, date of birth, social security number, and phone number as found on State's Exhibit 3. (4 R.R. 129).

Sonny Rathore did not know Appellant and Appellant did not have consent to have his personal identifying information. (4 R.R. 130-132; State's Ex. 3). Rathore then confirmed that State's Exhibit 3 contained his address, date of birth, phone

number, and social security number and that the list of information was not in his handwriting. (4 R.R. 131-132).

Appellant admitted owning the bag containing State's Exhibits 2 through 5, and Exhibits 7 through 12. (4 R.R. 149, 152, 157-158; State's Exhibit 6).

Detective Angelo Floiran, who has over seven years of experience investigating electronic and financial crimes, testified as an expert for the State. (C.R. 22; 5 R.R. 12-15, 18; State's Exs. 1-5, 7-12). From the numerous pieces of identifying information in Appellant's black bag as well as three USB drives, three SIM cards, an adapter, a walkie-talkie, and a scanner which Floiran believed was used to create driver's licenses and social security cards, Floiran attested that this was a straightforward identity theft case. (*Id;* 5 R.R. 19-21, 24, 27-37; State's Exs. 1-12). Referencing some of the hotel receipts as having Appellant's name on them, Floiran noted that identify thieves often use other people's information, like White's, to rent hotel rooms and gain free internet access to maintain anonymity. (5 R.R. 26-27; State's Ex. 1-5). After reviewing the identification documents found in Appellant's bag and the police reports prepared by Booth and Torres, Floiran concluded that Appellant possessed more than 10 and less than 50 pieces of identifying information and had an absolute intent to commit fraud. (5 R.R. 45; State's Ex. 1-12).

## 2. *Appellant's Speedy Trial Motion*

Appellant filed a Motion to Dismiss for Violation of His Sixth Amendment Right to Speedy Trial on July 26, 2014, at the time of the third pretrial appearance following the trial court's appointment of counsel to represent Appellant. On August 11, 2014, the trial court heard Appellant's Motion to Dismiss for Violation of His Sixth Amendment Right to Speedy Trial. (C.R.114; 3 R.R. 21-27). Appellant argued that the length of the delay should be measured from Appellant's arrest date on the misdemeanor theft case arising out of the same transaction until the date of trial, resulting in a delay between sixteen and eighteen months. (3 R.R. 24). Appellant further argued that his detention in Williamson County for an unrelated criminal offense between the time that Appellant was arrested for theft on November 25, 2012, and the time between the Appellant's indictment on August 7, 2013, should be included when calculating the length of the delay. (3 R.R. 24-25, C.R. 10-13, 18).

Appellant offered no evidence regarding any increased anxiety or impairment to his trial defense due to the delay. (3 R.R. 21-27, C.R. 10-13). Instead, Appellant relied solely on the "presumption of prejudice" based on the length of delay. (3 R.R. 25, C.R.12). Appellant then asked the trial court to dismiss the case. (C.R. 13).

The State argued that the length of delay should be measured from the date of the indictment, August 7, 2013, to the date of the trial, August 11, 2014, a delay of one year. (3 R.R. 23-27). The State explained that the reason for the delay was due to

Appellant's incarceration for prior crimes in other counties, and as such, the State was not responsible for Appellant's custody on offenses that occurred prior to this crime. (3 R.R. 27, C.R. 18). The State argued that even though a one year delay between the indictment and the trial is sufficient to trigger a *Barker*[1] analysis, the State was still entitled to a meaningful hearing to provide a justification for the delay and examine evidence of prejudice offered by the accused. (3 R.R. 27). Additionally, the State argued that Appellant's request for a dismissal, rather than a request for a trial setting, weighs against his assertion of his right to speedy trial. (3 R.R. 27, C.R. 13).

### 3. Prior Conviction Evidence

The State filed a notice upon Appellant's Request for Notice of Extraneous Offenses offered under 404(b) and 609(a) on July 16, 2014. (C.R. 23, 30; 5 R.R.9). The State's notice identified a conviction for forgery on or about April 21, 2006. (C.R. 23; 5 R.R. 52-54).[2]

The Court held a hearing outside the presence of the jury to determine the admissibility of Appellant's prior convictions. (5 R.R. 9-10, 51-65). The State argued that in light of Appellant's initial denial about possessing the bag or knowing the bag's contents, the forgery conviction should be admissible to show Appellant's state

---

[1] *Barker v. Wingo*, 407 U.S. 514 (1972)

[2] The State further listed several other convictions for Burglary of a Habitation, Credit Card Abuse, and Unauthorized Use of a Motor Vehicle. (5 R.R. 51-54; C.R. 23; State's Ex. 13). The trial court sustained Appellant's 404(b) objections to the introduction of these charges, and proceeded to evaluate the probative value of the forgery charge. *See id.*

of mind under 404(b). (5 R.R. 9-10, 51-54). Appellant argued that he had not opened the door to any 404(b) extraneous offense during his cross-examination and that he had not asked for a mistake of fact or law instruction in the charge. (5 R.R. 9-10). The State countered that 404(b) does not require Appellant to "open the door" to the use of an extraneous offense, it simply requires that the extraneous offense be "logically relevant to prove some other fact." (5 R.R. 11). The trial court then took the issue of the forgery conviction under advisement. (5 R.R. 11, 52).

After rehearing the issue, the trial court sustained Appellant's objection to the admission of the prior forgery conviction in part and overruled it in part. (5 R.R. 54). The trial court ruled that only the conviction and the date would come in for the limited purpose of intent. (5 R.R. 54). Appellant's trial counsel proceeded to question the authenticity of the judgment based on an assertion that the State failed to produce a copy of the judgment during discovery or properly designate a fingerprint expert to verify the defendant's identity. Following the court's ruling and the argument of the parties, Appellant's trial counsel announced the following stipulation:

| THE COURT: | The Discovery Order was signed pursuant to Article 39.14 of the Code of Criminal Procedure, and the Court did that based on the representation of the both parties. |
| --- | --- |
| MR. MCDERMOTT: | Judge, I did not, at that time, put on the record that I did not have a copy. |

| | |
|---|---|
| THE COURT: | Right. So at least one of the questions is whether or not the State complied with 39.14, under these circumstances. |
| MR. MCDERMOTT: | Judge, if this-- |
| THE COURT: | Yes. |
| MR. MCDERMOTT: | If the State is only going to enter the judgment in and that is all they're going to do and the instruction -- proposed instruction of the Court is given, then we'll have no further objection; let's make this easy. |
| THE COURT: | And I believe that that is an appropriate position, under the applicable provisions of the Code of Criminal Procedure. |
| | Okay. Let's get jury back in here. |
| MS. ARNOLD: | Okay. Wait. Just really quickly, I'm sorry. |
| THE COURT: | All right. |
| MS. ARNOLD: | Are you saying that you are stipulating to this or do you want us to call our expert to prove this up, (indicating)? Because it, before the jury comes back in, if that's the case, then we need to go ahead and get him fingerprinted and I needed to do an oral – |
| MR. MCDERMOTT: | Let's just -- let's just stipulate. |
| THE COURT: | Stipulate to the admissibility. |
| MR. MCDERMOTT: | And I will stipulate to its voracity. |
| THE COURT: | All right. I think -- |
| MS. ARNOLD: | Along with oral instruction that you're going to give the jury -- |

THE COURT:                 Correct.

MS. ARNOLD:                -- to not consider it --

THE COURT:                 Along with the oral --

MS. ARNOLD:                -- in terms of character evidence.

THE COURT:                 Correct. As I understand that, that is a tactical decision by the Defense based, in part, on the fact that it's a 2007 conviction.

MR. MCDERMOTT:             Yes, Judge.

THE COURT:                 All right.

MR. MCDERMOTT:             It is a tactical decision by the Defense based in part on the arguments presented, the history of this case, and the -- the procedural history of this case and history of the trial as it has unfolded.

THE COURT:                 All right. Let's go ahead --

MR. MCDERMOTT:             Thank you, Judge.

(5 R.R. 64-66)

(*Open court, defendant and jury present*)

THE COURT:                 The State will call its next witness.

MS. ARNOLD:                Judge, we have no further witnesses, but we do have additional evidence.

THE COURT:                 All right.

MS. ARNOLD:                We are proffering 13 into evidence, which has already been shown to the Defense.

MS. ARNOLD:                And I believe you've stipulated to this?

Page 13

MR. MCDERMOTT: Judge, we've stipulated to this; therefore, I have no objection.

THE COURT: All right

No further objection was raised as to the unfairly prejudicial nature of the conviction. *Id.* State's Exhibit 13 documenting Appellant's 2006 forgery conviction was admitted for the limited purpose of intent and a limiting instruction was read to the jury. *Id.*

## SUMMARY OF THE ARGUMENT

**RESPONSE TO POINT OF ERROR 1:** The trial court properly denied Appellant's speedy trial motion in light of the *Barker* factors and circumstances of this particular case. Appellant incorrectly calculated the length of delay to total 16 to 19 months in order to inflate his request for relief. The actual length of delay was 12 months and Appellant's incarceration in another county on unrelated criminal charges justified the delay. The filing of Appellant's motion, less than two months before trial, his request for outright dismissal rather than an immediate trial, and lack of prejudice to Appellant weigh in favor of the State. Accordingly, the Court should affirm the trial court's denial of Appellant's speedy trial motion.

**RESPONSE TO POINT OF ERROR 2:** The Court need not address Appellant's second point of error because Appellant conceded the probative value of the prior forgery conviction by stipulating to the admissibility of the extraneous offense.

Page 14

Appellant's stipulation and subsequent withdrawal of his 404 (b) objection operates as a judicial concession that fails to properly preserve error for review. Even if the court finds that error in the admission of the offense was preserved under Rule 404(b), the limiting instruction provided to the jury lessened any potential prejudice arising from the introduction of the prior forgery conviction. In light of the overwhelming evidence supporting the jury's verdict, the error, if any, in admitting the extraneous offense was harmless.

**RESPONSE TO POINT OF ERROR 3:** After stipulating to the admissibility of the extraneous offense, Appellant failed to raise an objection under Rule 403 that the prior conviction evidence was unfairly prejudicial to Appellant. Even if the objection was preserved for review, the trial court is not required to announce the balancing test on the record. Because Appellant did not suffer substantial harm as a result of the admission of the extraneous offense, Appellant's third claim fails.

**RESPONSE TO POINT OF ERROR 4:** The evidence was legally sufficient to convict Appellant for the charged offense. Appellant had numerous forms of identifying information in his possession at the time of the arrest, including seven driver's licenses, one passport, one social security card, and an unrelated child's birth certificate. Further, the State conclusively established a minimum of 13 items of identifying information found in his possession at the time of his arrest without the owner's consent. Based on the witnesses' testimony and a review of State's Exhibits

1 through 13, a rational factfinder could have found beyond a reasonable doubt that Appellant possessed more than ten items of identifying information without the owners' consent.

## ARGUMENT

**STATE'S RESPONSE TO POINT OF ERROR ONE**
THE TRIAL COURT PROPERLY DENIED APPELLANT'S MOTION TO DISMISS FOR VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO SPEEDY TRIAL.

### 1. Standard of Review

An appellate court reviewing a trial court's ruling on a speedy trial motion employs a bifurcated standard of review; an abuse of discretion for the trial court's determination of the facts and a *de novo* standard for its application of the law. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). While a reviewing court should afford almost total deference to a trial court's determination of the historical facts that the record supports, in reviewing trial court's decisions on federal constitutional speedy trial claims, appellate courts may conduct *de novo* review by independently weighing and balancing the four *Barker* factors. *Barker v. Wingo*, 407 U.S. 514, 532-3, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

The Sixth Amendment's plain language limits the applicability of the Speedy Trial Clause only to an "accused." *Gonzales v. State,* 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). Thus, a person who has not been formally accused cannot seek

protection from the speedy trial clause, and the State is not required to accuse a person within any particular period of time. *See id.*

A reviewing court must balance four factors when analyzing a trial court's decision to grant or deny a speedy trial claim: 1) the length of the delay before trial; 2) the reason for the delay; 3) the assertion of the right to a speedy trial; and 4) whether the defendant suffered prejudice as a result of the delay. *Munoz,* 991 S.W.2d at 821(citing *Barker,* 407 U.S. at 532-3). No single factor is a necessary or sufficient condition to the finding of a speedy trial violation. *Zamorano,* 84 S.W.3d at 648.

The length of delay is a triggering mechanism for analysis of the other *Barker* factors. *Munoz,* 991 S.W. 2d at 821. A mere passage of time is not prejudicial and will not result in the denial of speedy trial. *Lott v. State,* 951 S.W.2d 489, 495 (Tex. App.—El Paso 1997, reh'g denied)(holding that defendant's failure to raise speedy trial complaint until 30 years following indictment did not weigh in defendant's favor). Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other [*Barker*] factors that go into the balance. *Id.* "Presumptive prejudice" does not necessarily indicate a statistical probability of prejudice, it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry. *Id.* While there is no set time element that triggers the *Barker* analysis, most Texas courts have held that a delay of one year

generally triggers a speedy trial analysis. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008).

Appellant argues that any delay exceeding 8 months is presumptively prejudicial, and thus triggers a *Barker* analysis based on the holding in *Harris v. State*, 827 S.W.2d 949 (Tex. Crim. App. 1992).[3] App. Brf., p. 23. However in *Harris*, the Texas Court of Criminal Appeals held that a 13-month delay, while sufficient to trigger a *Barker* analysis was not extraordinary given the complexity of the prosecution's case, Appellant's failure to invoke his constitutional speedy trial right until the trial setting, and Appellant's failure to present evidence of any particularized prejudice. *Harris*, 827 S.W.2d at 956.

### 2. Application of Law and Facts

#### a) The Length of Delay

One's right to a speedy trial is triggered by a length of delay that must be presumptively prejudicial. *Munoz*, 991 S.W. 2d at 821. The length of the delay is measured from the date the defendant is arrested or formally accused and is determined on a case by case basis as to whether the delay is sufficient to trigger further speedy trial analysis. *Harris*, 827 S.W. 2d at 956. The time period where no charges are pending should not count against the State for purposes of a speedy trial analysis. *See Ex parte Cathcart*, 13 S.W.3d 414, 417 (Tex. Crim. App. 2000).

---

[3] LaFave & Israel, a secondary source, is the basis for the oft quoted premise that a delay of "eight months or longer" triggers a speedy trial analysis. *See* Lafave & Israel, Criminal Procedure § 18.2(b)(1984), *e.g., see Harris.*

Here, Appellant was formally charged on August 7, 2013, when the grand jury returned the indictment against him. He was never restrained of his liberty for this specific offense until the capias was served on February 4, 2014. Although a 12-month delay is sufficient to trigger a speedy trial analysis, most courts have found it to be considered the minimum amount of time needed to meet the threshold of a *Barker* analysis, and not an excessive amount of time that weighs against the state.[4] *Doggett v. United States*, 505 U.S. 647, 651 fn. 1, 112 S. Ct. 2686, 2691 fn. 1, 120 L.Ed. 2d (1992); *Harris,* 827 S.W. 2d at 956; *Munoz,* 991 S.W. 2d at 821.

b) *The Reason for the Delay*

It is the State's burden to justify a lengthy delay. *Cantu,* 253 S.W.3d at 280. Both the United States Supreme Court and the Texas Criminal Court of Appeals have held that a defendant can waive a speedy trial when he is responsible for the delay. *Munoz,* 991 S.W.2d at 822 ("delay which is attributable to the defendant may even constitute a waiver of a speedy trial claim")(citing *Barker*, 407 U.S. 528-30 (delay attributable to defendant constitutes waiver of speedy trial).

Delay that results from Appellant's own actions should weigh heavily against him and in favor of the State. *Munoz,* 991 S.W.2d at 822; *see also Burton v. State*, 805 S.W.2d 564, 572 (Tex. App.—Dallas 1991, pet. ref'd). Furthermore, courts have

---

[4] Appellant deducted a three (3) month period at the time of trial and in Appellant's brief based on "the period of time attributable to agreed court resets." App. Brf., p. 23. If the State relied on this argument, the length of delay would measure nine (9) months, and thus arguably would fail to trigger the *Barker* analysis.

held that the right to speedy trial is not violated where Appellant agrees to court resets and fails to object to continuances that effectively postpone the trial. *Burton*, 805 S.W.2d at 572. Additionally, good faith plea negotiations, overcrowded dockets, and the case's complexity make some delays inevitable, and should not weigh heavily against the state. *See Munoz*, 991 S.W.2d at 824.

Here, Appellant was the sole cause for the delay. Although Appellant contends that the State should be faulted for his slew of criminal activity and punishment thereafter in Williamson County, the fact that Appellant was confined in another county for the first six months after the indictment is wholly his fault. This factor should weigh heavily against Appellant. *See Burton*, 805 S.W.2d at 564 (holding that a four year delay resulting from appellant absconding after being released on bail pending trial was wholly his fault).

Furthermore, the record demonstrates the State did not intentionally delay Appellant's prosecution.[5] Appellant was indicted on this felony charge in August of 2013. (C.R. 17, 61). A capias was issued one week after his indictment, and was executed less than six months later in Williamson County, where Appellant was sentenced to TDCJ for an offense he committed prior to this offense (C.R. 18, 61). He was bench warranted back to Hays County on February 4, 2014, immediately

---

[5] The Sixth Amendment limits the applicability to right of speedy trial clause only to the accused and the State is not required to discover, investigate, and accuse a person within any particular period of time. *See Gonzales*, 435 S.W.3d at 809. The State was under no obligation to present Appellant's charge to the grand jury prior to August 7, 2013, or immediately following the November 25, 2012, arrest.

after he finished serving his sentence at TDCJ for an unrelated Burglary of a Building case. (3 R.R. 23, C.R. 17-18, 61). After receiving appointed counsel in March of 2014, Appellant then sought two (2) agreed court resets before filing his speedy trial motion less than two months before the trial setting. (4 R.R. 23-25, C.R. 17, 61). Appellant and the State participated in plea negotiations, and the State and Defense both announced ready at the first trial setting *immediately* following the denial of Appellant's speedy trial motion. (3 R.R. 27-30, 4 R.R. 12). The fact that the State diligently prosecuted this matter following Appellant's indictment in conjunction with Appellant's fault in creating the delay should weigh heavily in favor of the State.

### c) The Assertion of the Right

The Criminal Court of Appeals has held that the defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim. *McCarty v. State*, 498 S.W.2d 212, 216 (1973). A lack of persistence in asserting the right further attenuates a speedy trial claim. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). Although one cannot waive his right to a speedy trial, resting on one's laurels until right before trial to assert the right is potentially too late. *See id.*

Here, Appellant asked for a dismissal rather than a trial in his motion filed less than two months before the jury trial setting.[6] (C.R. 10-13). Appellant's trial counsel did not urge his speedy trial motion until August 7, 2014, four days before trial at the pre-trial hearing. (2 R.R. 7, C.R. 114). A lack of timely demand and Appellant's motivation for seeking a dismissal indicate that the Appellant did not want a speedy trial and should weigh strongly against Appellant.

### d) Prejudice Caused by the Delay

In *Zamarono,* the Court identified three interests that the right to speedy trial was designed to protect: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired. *Zamorano,* 84 S.W.3d at 652. The Criminal Court of Appeals has highlighted the last interest as the most crucial since the defendant must be provided the opportunity to "adequately prepare his defense." *Gonzales v. State,* 435 S.W. 3d at 812(citing *Barker,* 407 U.S. at 532, 92 S.Ct. 2182). Ordinarily, the defendant must make some showing of prejudice, although a showing of actual prejudice is not required. *Munoz,* 991 S.W.2d at 826.

Appellant compares his case to *Gonzales v. State,* in which the Court held that the defendant's right to a speedy trial was violated after finding a six year delay

---

[6] Despite Appellant's argument that he timely asserted his speedy trial motion after retaining counsel, the record clearly indicates that the speedy trial motion was filed three months after the appointment of counsel and after Appellant had agreed to three resets without objection on April 22, 2014, May 22, 2014, and June 26, 2014. App. Brf., p. 20, 25; (C.R. 17, 61).

between appellant's indictment and arrest where the State failed to provide any explanation for the delay after the defendant timely asserted his right to a speedy trial. *Gonzales,* 435 S.W. 3d at 809. Appellant misinterprets the *Gonzales* language and holding. While addressing the issue of prejudice, the *Gonzales* court was specifically examining the role that an *excessive* delay plays in the impairment of a defendant's ability to present a defense. *Id.* The Court held that "in certain instances, the *length of delay may be so excessive* that it presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Id.* Only then "in such instances, the defendant is absolved from the requirement to demonstrate prejudice." *Id. Gonzales* does not purport to establish new law, it merely applies the law to cases of excessive delay. *See State v. Tatom,* No. 05-14-01246-CR, 2015 WL 1735964 at 6 (Tex. App.—Dallas, Apr. 14, 2015)(mem. op., not designated for publication). Where the court fails to find excessive delay, there is no basis for a court to presume prejudice. *Id.*

Here, there was a delay of a year between the indictment and Appellant's trial. (C.R. 17, 61). Appellant offered no evidence as to any anxiety or concern. Nor did he offer any evidence that his defense was impaired due to the passage of time. (C.R. 10-13, 18, 60-61; 3 R.R. 21-27). Rather, Appellant now seeks to argue that his defense was impaired based on a mere reading of the record.[7] An appellate court

---

[7] App. Brf., p.26.

reviewing a trial court's ruling on a motion to dismiss for want of speedy trial must do so in light of the evidence offered to the trial court at the time it ruled. *Dragoo*, 96 S.W. 3d at 313. Therefore, this Court should not consider Appellant's argument as to whether Appellant suffered any prejudice as a result of the one year delay between the time Appellant was indicted until the trial. (3 R.R. 21-27).

Based on the *Barker* factors, the trial court properly denied Appellant's Motion to Dismiss for Violation of his Sixth Amendment Right to a Speedy Trial, and this Court should uphold the trial court's ruling. The actual length of the delay, the lack of negligence by the State in prosecuting this case, and the fact that the State presented a justifiable reason for the delay should weigh in favor of the State. The delay in Appellant's case was not extraordinary, and thus Appellant's claim was rightfully denied as there was no showing of prejudice. Appellant's first claim fails.

## STATE'S RESPONSE TO POINT OF ERROR TWO

APPELLANT WAIVED HIS 404(B) OBJECTION TO EVIDENCE OF HIS PRIOR FORGERY CONVICTION BY STIPULATING TO THE ADMISSIBILITY AND VERACITY OF THE EVIDENCE. THE ERROR, IF ANY, IN ADMITTING THE EXTRANEOUS OFFENSE FOR WAS HARMLESS IN LIGHT OF THE LIMITING INSTRUCTION PROVIDED TO THE JURY AND THE OVERWHELMING EVIDENCE OF GUILT PRESENTED BY THE STATE.

*1. Appellant waived any 404(b) objection to the admission of the prior forgery offense by stipulating to the admissibility and veracity of the conviction.*

### a) Standard of Review

This Court need not address Appellant's second or third point of error as it was waived by his stipulation to the forgery conviction and failure to properly preserve the error for review. To preserve an issue for appeal, a party must have presented a timely objection, or motion that states the specific grounds for a desired ruling if they are not apparent from the context of the objection or motion. *Reed v. State*, 927 S.W.2d 289, 291 (Tex. App.—Fort Worth 1996, no pet.). If a party fails to object, the error is not preserved, and the complaint is waived. *Id.* An objection must be specific, and the objection preserves only the specific grounds cited. *Id.*

A stipulation is tantamount to a judicial admission, which has the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. *See Bryant v. Texas,* 187 S.W.3d 397, 399 (Tex. Crim. App. 2005). By entering into a stipulation, a party waives the right to put the government to its proof of that

element, and he cannot complain on appeal that the State failed to prove an element to which he judicially confessed. *See id* at 402.

b) Application of Law and Facts

Although Appellant initially objected to the admission of the forgery offense, Appellant's attorney eventually stipulated to the conviction's admissibility in light of the court's proposed limiting instruction. (5 R.R. 64-67; State's Ex. 13). At the time the State offered State's Exhibit 13 into evidence, Appellant's trial counsel responded that Appellant had no objection. *Id.* Thus, Appellant's stipulation to the forgery offense forfeits his 404(b) objection. Because Appellant stipulated to both the conviction's admissibility during the 404(b) conference as well as the judgment's authenticity, Appellant has failed to properly preserve this issue.

2. *The error, if any, in admitting the extraneous offense for the limited purpose of intent was harmless in light of the limiting instruction provided to the jury and the overwhelming evidence of guilt presented by the State.*

a) Standard of Review

Should this Court choose to address Appellant's second point of error, the standard of review for the trial court's admission of an extraneous offense is an abuse of discretion. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)(op. on reh'g). Extraneous offenses may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident or to rebut defensive theories raised by a defendant in opening statement or

during cross-examination of a State's witness. *Montgomery,* 810 S.W.2d at 387. A trial court is given wide latitude to admit or exclude extraneous offenses. *Id* at 390.

A trial court does not abuse its discretion to admit an extraneous offense if its decision falls within the "zone of reasonable disagreement." *See Johnson v. State,* 932 S.W.2d 296, 301 (Tex. App.—Austin 1996, pet. ref'd.) A trial court's ruling is generally within the zone of reasonable disagreement if the evidence shows that: 1) an extraneous offense is relevant to a material, noncharacter conformity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Montgomery,* 810 S.W.2d at 377. Whenever the extraneous offense is substantially similar to the charged offense, there is always a potential that the jury may be unfairly prejudiced by the offender's character conformity. *Lane v. State,* 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). However, any impermissible inference of character conformity can be minimized through a limiting instruction. *See id.* *(citing Montgomery,* 810 S.W.2d at 391).

Overwhelming evidence of guilt is a relevant factor in any Rule 44.2(b) harm analysis. *Motilla v. State,* 78 S.W.3d 352, 356–57 (Tex. Crim. App. 2002); *See also, e.g., Whitaker v. State,* 286 S.W.3d 355, 363–64 (Tex. Crim. App. 2009). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not

influence the jury, or had but a slight effect on the verdict. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

b) Application of Law to Facts

To the extent Appellant's objection was not waived following his stipulation to the admissibility of the extraneous offense, the trial court deemed the prior forgery conviction as having probative value for the limited purpose of intent.[8] If the Court deems the admission of the prior forgery conviction as error, Appellant was not harmed by the admission of the offense. Prior to the conviction's publication to the jury, the trial court provided a limiting instruction to the jury that the forgery conviction could solely be considered for the purpose of intent. (5 R.R. 54, 65-67; State's Exhibit 13). The limiting instruction mitigated any potential prejudicial effect or harm resulting from the admission of the extraneous offense. *Johnson,* 932 S.W.2d at 303.

Even if the Court determines that the limiting instruction was insufficient to mitigate any potential harm resulting from the admission of the extraneous offense, the record as a whole shows overwhelming evidence of Appellant's guilt. Appellant

---

[8] The element of intent is by nature material to the State securing a conviction against Appellant. *See Johnson,* 932 S.W.2d at 301. An extraneous offense is admissible to prove intent if the required intent cannot be inferred from the act itself, or if the accused presents evidence to rebut the inference of intent. *See id* at 302. Unless the record clearly reveals a different result is appropriate, we must defer to the factfinder's determination. *See Carruth v. State,* 762 S.W.2d 364, 367 (Tex. App.—Fort Worth 1998, no pet.)(holding evidence of extraneous offenses of forgery and theft admissible to rebut defensive theory that no intent to defraud by forgery existed).

admitted ownership of the bag and identified knives that were ultimately discovered in the bag prior to the officers' search. Further, the bag's contents included hotel receipts and emails in Appellant's name. (4 R.R. 108-109, 111-112; 5 R.R. 41). The State introduced seven individual driver's licenses found in Appellant's possession, a passport and social security card for an eighth individual, a birth certificate and medical immunization record for a ninth individual with no known connection to Appellant, and a listing of 15 different individual names with their corresponding dates of birth, addresses, and social security numbers. (4 R.R. 39-55; State's Ex. 2, 3, 4).

Witness testimony from White, Snodgrass, Brown, and Rathore all confirmed that Appellant did not have consent to possess their specific items of personal identification. (4 R.R. 117-132; State's Ex. 3). Appellant's bag contained three USB devices, three SIM cards, a Magic Wand scanner, two disks, and adapter plugs, which Det. Floiran, an expert in financial crimes and fraud investigations, testified are commonly found in identity fraud cases. (5 R.R. 39). Based on Det. Floiran's expert opinion, Appellant knowingly possessed over 10 items of others' identifying information with the intention to defraud those individual owners. (5 R.R. 45).

The trial court's admission of Appellant's prior criminal conviction was within the zone of reasonable disagreement, and thus not an abuse of discretion. Even assuming the decision to admit the evidence was improper, Appellant did not suffer

injury or substantial harm as a result that warrants a reversal of his criminal conviction.

## STATE'S RESPONSE TO POINT OF ERROR THREE

APPELLANT FAILED TO RAISE A TIMELY 403 OBJECTION TO THE ADMISSION OF THE FORGERY CONVICTION AS REQUIRED TO PRESERVE ERROR, AND APPELLANT DID NOT SUFFER SUBSTANTIAL HARM AS A RESULT OF THE ADMISSION OF THE FORGERY CONVICTION.

*1. Appellant failed to raise a timely 403 objection to the admission of the forgery conviction as required to preserve error.*

a) *Standard of Review*

Once a trial court resolves a Rule 404(b) challenge to the admission of evidence of a prior bad act by finding that the extraneous offense is relevant to a material, non-character conformity issue, the opponent of the evidence is required to further object under Rule 403[9] in order to preserve error on appeal. *Montgomery,* 810 S.W.3d at 388; *Johnson,* 932 S.W.2d at 303. A party who fails to timely object fails to preserve error and waives complaint on appeal. *Reed,* 927 S.W.2d at 291.

If a Rule 403 objection is made challenging the admission of the extraneous offense evidence, the court must conduct a balancing test to determine if the probative value of the evidence is substantially outweighed by the prejudicial effect that the information will have on finder of fact. *Johnson,* S.W.2d at 303. When

---

[9] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403.

conducting a 403 analysis, the court looks at four factors: 1) the probative value of the evidence; 2) the potential to impress the jury in some irrational yet indelible way; 3) the time needed to develop the evidence; and 4) the proponent's need for the evidence. *Mechler v. State*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Rule 403 favors the admissibility of relevant evidence and there is a presumption that relevant evidence will be more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389.

### b) Application of Law and Facts

After conceding admissibility of the evidence under Rule 404(b),[10] Appellant did not object under Rule 403 to properly preserve error for review.[11] *Montgomery*, 810 S.W.2d at 395. Because Appellant failed to raise a contemporaneous objection to the unfairly prejudicial nature of the prior conviction after the trial court ruled that the evidence was admissible under Rule 404(b), Appellant has forfeited Appellate review of this point. *Id.*

Even if the Court determines Appellant sufficiently objected to the admissibility of the prior conviction, the forgery conviction was deemed probative only for the limited purpose of intent. Appellant's counsel made the tactical decision

---

[10] See STATE's RESPONSE TO POINT OF ERROR TWO, above.

[11] Appellant asserts that "the record reflects that the trial court did not conduct a Rule 403 balancing test." App. Brf., p. 33. However, there is no requirement that the trial court announce for the record that it has conducted a balancing test in its own mind. *Nolen v. State*, 872 S.W.2d 807, 812 (Tex. App.—Fort Worth 1994, pet. ref'd). The fact that a trial judge made a proper balancing test can be implied from the record of a court proceeding. *Nolen*, 872 S.W.2d at 812. Furthermore, the trial court's decision to sustain defense counsel's objection to the introduction of Appellant's prior convictions for Burglary of Habitation, Credit Card Abuse, and Unauthorized Use of a Motor Vehicle support an inference that the trial court conducted a 403 balancing test.

to stipulate to the admissibility of this prior bad act arguably based on trial counsel's belief that the 2006 conviction would fail to impress the jury in an indelible or inflammatory manner. Because Appellant failed to raise an objection as to the prejudicial nature of the charge, Appellant has waived this issue for review on appeal.

### 2. The admission of the prior forgery offense did not cause Appellant to suffer substantial harm.

#### a) Standard of Review

Error in admitting evidence concerning extraneous offenses is reviewed under the standard for nonconstitutional error set forth in Rule 44.2(b), Tex. R. App. P. *Higginbotham v. State,* 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd.). Any nonconstitutional error that does not affect a substantial right must be disregarded as a harmless error. *See id.* If, on the record as a whole, it appears the error did not influence the jury, or had but a slight effect, a reviewing court must conclude the error was not harmful and allow the conviction to stand. *Id.*

#### b) Application of Law and Facts

If the Court finds that the prior forgery conviction was improperly admitted despite Appellant's stipulation and failure to object under Rule 403, the error would be harmless.[12] Not only was a limiting instruction provided to the jury prior to the publication of the evidence, but the State presented overwhelming evidence of the Appellant's guilt. If the Court, after a review of the record as a whole, has fair

---

[12] See STATE'S RESPONSE TO POINT OF ERROR TWO, above, for a complete harm analysis regarding the trial court's error, if any, in admitting the extraneous offense.

assurance that the admission of extraneous offense did not have a substantial and injurious effect or influence in determining the jury's verdict, the Court may not reverse based on an abuse of discretion. *See Johnson,* 967 S.W.2d at 417.

## STATE'S RESPONSE TO POINT OF ERROR FOUR
THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT.

### *1. The evidence was sufficient to support the jury's guilty verdict.*

a) <u>Standard of Review</u>

In reviewing a challenge to the legal sufficiency of the evidence, the appellate court examines the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Courts review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See id.*

A person commits the offense of Fraudulent Possession of Identifying Information More than 10 but Less than 50 Items "if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of identifying information of another person without the other person's consent." Tex. Pen. Code. 32.51(b)(1)(West 2011). Identifying information is defined as "information that alone or in conjunction with other information identifies a person, including a persons:

name, date of birth, unique biometric data, including the person's fingerprint, voice print, or retina or iris image; unique electronic identification number, address, routing code, or financial institution account number, telecommunication identifying information or access device; and social security number or other government-issued identification number." Tex. Pen. Code 32.51(a)(West 2011).

In *Cortez v. State*, the Texas Court of Criminal Appeals held that an "item of identifying information" as any single piece of personal identifying information enumerated in the definition of "identifying information" that alone or in conjunction with other information identifies a person, as opposed to a thing that may contain a group of pieces of information identifying a person, such as a license, credit card, or document." *Cortez v. State,* No. 0501-14, 2015 WL 3776495 at 4-5 (Tex. Crim. App., June 17, 2015). Under the Court's interpretation of the statute, a defendant can possess an "item of identifying information" regardless of the physical form in which that information is possessed. *Id* at 7. Further, a single document or tangible thing can contain multiple "items of identifying information." *Id.* An actor is "presumed to have the intent to harm or defraud another if the actor possesses: the identifying information of three or more other persons." Tex. Pen. Code. 32.51(b)(1)(West 2011).

b) <u>Application of Law and Facts</u>

In this case, the evidence was overwhelming that the Appellant possessed more than ten items of identifying information.[13] Witness testimony and the State's exhibits corroborated that the checks, driver's licenses, social security numbers, birth certificates, addresses, dates of birth, and names found within Appellant's bag amounted to well over ten items of identifying information. Reviewing the evidence in the light most favorable to the verdict, the State introduced seven individual driver licenses found in Appellant's possession, a passport and social security card for an eighth individual, checks in the name of six additional individuals, a birth certificate and medical immunization record for a ninth individual with no known connection to Appellant, and a listing of 15 different individual names with their corresponding date of birth, addresses, and social security numbers. (4 R.R. 39-55; State's Ex. 2, 3, 4).

Appellant concedes that if an accused possessed a driver's license, for example, he would be in possession of three items of identifying information, specifically the person's name and date of birth, address, and driver's license number. *See* App. Brf., p. 38. Even if the Court were to rely exclusively on the items that

---

[13] In arguing that the evidence is legally insufficient to support Appellant's conviction for fraudulent use or possession of identifying information 10 or more items but less than 50 items, Appellant challenges the number of actual items of identifying information presented by the state, but fails to contest the sufficiency of the evidence as to intent or that Appellant had the consent of the complainant's to possess the items of identifying information. App. Brf., p. 37-42. But see also the discussion of the overwhelming evidence of guilt *vis a vis* harmless error relating to Point of Error Three, at p. 31.

belonged to White, Snodgrass, Brown, and Rathore, the State would have admitted evidence that Appellant possessed at least 13 items of identifying information obtained without the owner's consent.[14] (4 R.R. 118-119, 125-131; State's Exhibit 3, 4, 5).

Detective Floiran corroborated the physical evidence produced by the State and testified that Appellant possessed more than 10 items of identifying information, but less than 50. The jury could also presume that because Appellant had more than three identifying items, he had the intent to harm or defraud another as set forth Texas Penal Code § 32.51. Because the evidence is legally sufficient to support the jury's determination of Appellant's guilt beyond a reasonable doubt, Appellant's fourth point of error should be overruled.

## CONCLUSION

Appellant's constitutional right to speedy trial was not violated as a result of the 12 month delay between the indictment and the trial. The State diligently prosecuted this case and six months of the delay is solely attributable to Appellant as a result of his incarceration an unrelated offense. Appellant's failure to put forth any

---

[14] The State calculates the items of identifying information in light of the Texas Criminal Court of Appeals holding in *Cortez. See Cortez,* No. 0501-14, 2015 WL 3776495 at 5-8. The items of identifying information include three from White's recovered driver's license, (name and date of birth, address, and driver's license number), four items belonging to Snodgrass (name and date of birth, address, driver's license number, and social security number), three from Brown (name and date of birth, address, and social security number), and three belonging to Rathore (name and date of birth, address, and social security number.)

evidence of prejudice, request for an outright dismissal of the case, and the State's justifiable explanation as to the nature of the delay weigh in favor of the State in the context of a *Barker* analysis.

Appellant failed to properly preserve error to challenge the admissibility of the prior forgery offense both as improper character evidence and as unfairly prejudicial to Appellant. Therefore, the Court is precluded from examining Appellant's points of error two and three.

Finally, the evidence before the court was legally sufficient to support the jury's verdict as the State presented evidence of a minimum of 13 items of identifying information possessed by Appellant without the consent of the owner. The State presented both expert testimony as well as circumstantial evidence to prove the element of intent beyond a reasonable doubt. Accordingly, this appeal should be denied *in toto*.

## PRAYER

Wherefore, premises considered, the State respectfully prays that the Court overrule Appellant's issues, AFFIRM the trial court's judgment of GUILT, including affirmation of the punishment.

Respectfully submitted,

By: Whitney L. Borgman
Whitney L. Borgman
Assistant Criminal District Attorney
712 S. Stagecoach Trail, Suite 2057
San Marcos, Texas 78666
State Bar No. 24082224
whitney.borgman@co.hays.tx.us
Attorney for the State of Texas

## CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. PROC., RULE 9.4

I certify that this brief contains <u>8,839</u> words, exclusive of the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

Whitney L. Borgman
Whitney L. Borgman
Assistant Criminal District Attorney

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing brief has been e-delivered to:

Dal Ruggles
1103 Nueces
Austin, Texas 78701
on this the 17th day of August, 2015.

_Whitney L. Borgman_
Whitney L. Borgman
Assistant Criminal District Attorney